**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

RISE ST. JAMES LOUISIANA, et al.,

        Plaintiffs,

v.

COURTNEY J. BURDETTE, in her official
capacity as Secretary of the Louisiana
Department of Environmental Quality, et al.,

        Defendants.

Civil Action No. 3:25-cv-00429-JWD-RLB

## <u>DEFENDANTS' COMBINED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND .................................................................................................................2

LEGAL STANDARDS ........................................................................................................4

ARGUMENT ......................................................................................................................5

I.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(1)
      FOR LACK OF SUBJECT MATTER JURISDICTION. .....................................................6

      A.    Plaintiffs Lack Article III Standing. ...........................................................6

      B.    Plaintiffs' Claims are Barred by Sovereign Immunity. ...............................8

II.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(6) FOR FAILURE TO
      STATE A CLAIM FOR RELIEF. ..................................................................................11

      A.    Plaintiffs Fail to State a First Amendment Claim (Free Speech and Petition). ....................11

      B.    Plaintiffs Fail to State a Claim for Preemption. ........................................14

CONCLUSION .................................................................................................................17

CERTIFICATE OF SERVICE ..........................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Allen v. Hays,*
   65 F.4th 736 (5th Cir. 2023) ................................................................................5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..........................................................................................5

*Barrosse v. Huntington Ingalls, Inc.,*
   70 F.4th 315 (5th Cir. 2023) ..............................................................................16

*Benfield v. Magee,*
   945 F.3d 333 (5th Cir. 2019) ..............................................................................5

*Borough of Duryea v. Guarnieri,*
   564 U.S. 379 (2011) ..........................................................................................13

*Boy Scouts of America v. Dale,*
   530 U.S. 640 (2000) ..........................................................................................12

*Carney v. Adams,*
   592 U.S. 53 (2020) ..............................................................................................6

*Casillas v. Madison Ave. Assocs., Inc.,*
   926 F.3d 329 (7th Cir. 2019) ..............................................................................8

*Chamber of Com. v. Whiting,*
   563 U.S. 582 (2011) ..........................................................................................16

*City of Austin v. Paxton,*
   943 F.3d 993 (5th Cir. 2019) ......................................................................8, 9, 10

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................................6, 7

*Elam v. Kan. City S. Ry. Co.,*
   635 F.3d 796 (5th Cir. 2011) ..............................................................................14

*English v. General Electric Co.,*
   496 U.S. 72 (1990) ............................................................................................17

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) ........................................................................................6, 7

*Free Speech Coal., Inc. v. Paxton,*
   No. 23-1122, 2025 WL 1773625 (U.S. June 27, 2025) ............................12, 13

*Freedom From Religion Found., Inc. v. Mack,*
    4 F.4th 306 (5th Cir. 2021) ................................................................................. 8, 9

*Freedom From Religion Found., Inc. v. Mack,*
    49 F.4th 941 ........................................................................................................ 8

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) ............................................................................. 4

*Iberia Credit Bureau, Inc. v. Cingular Wireless,*
    668 F. Supp. 2d 831 (W.D. La. 2009) ............................................................... 14

*In re FEMA Trailer,*
    668 F.3d 281 (5th Cir. 2012) ............................................................................... 4

*Kling v. Hebert,*
    60 F.4th 281 (5th Cir. 2023) ............................................................................... 5

*Lasko v. Consumers Petroleum of Conn., Inc.,*
    547 F. Supp. 211 (D. Conn. 1981) .................................................................... 16

*Little v. KPMG LLP,*
    575 F.3d 533 (5th Cir. 2009) ............................................................................... 5

*Magee v. Covington Cty. Sch. Dist. ex rel. Keys,*
    675 F.3d 849 (5th Cir. 2012) (en banc) ............................................................. 5

*Mandawala v. Ne. Baptist Hosp.,*
    16 F.4th 1144 (5th Cir. 2021) ............................................................................. 5

*McLin v. Twenty-First Jud. Dist.,*
    79 F.4th 411 (5th Cir. 2023) ............................................................................... 4

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) .......................................................................................... 14

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) ........................................................................... 10

*Minn. State Bd. for Cmty. Colls. v. Knight,*
    465 U.S. 271 (1984) .......................................................................................... 13

*Miss. State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008) ............................................................................... 7

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ............................................................................................ 7

*Morris v. Livingston*,
   739 F.3d 740 (5th Cir. 2014)....................................................................................8

*Murthy v. Missouri*,
   603 U.S. 43 (2024)...........................................................................................6, 7

*Nat'l Press Photographers Ass'n v. McCraw*,
   90 F.4th 770 (5th Cir. 2024)......................................................................7, 10, 11, 12

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005)....................................................................................5

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001)....................................................................................5

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947)..............................................................................................14

*Robicheaux v. Caldwell*,
   986 F. Supp. 2d 749 (E.D. La. 2013)......................................................................10

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995)..............................................................................................13

*Tex. All. for Retired Americans v. Scott*,
   28 F.4th 669 (5th Cir. 2022).................................................................................8, 9

*Tex. Democratic Party v. Abbott*,
   978 F.3d 168 (5th Cir. 2020)................................................................................9, 11

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).........................................................................................6, 7, 8

*Turner Broadcasting System, Inc. v. FCC*,
   520 U.S. 180 (1997)..............................................................................................13

*U.S. v. O'Brien*,
   391 U.S. 367 (1968)..............................................................................................12

*Voting for Am., Inc. v. Steen*,
   732 F.3d 382 (5th Cir. 2013)..................................................................................12

*White Hat v. Murrill*,
   141 F.4th 590 (5th Cir. 2025)...........................................................................10, 11

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. May 1981)............................................................................5

*Wis. Pub. Intervenor v. Mortier*,
    501 U.S. 597 (1991) ....................................................................................14

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ....................................................................................14

*Young Conservatives of Tex. Found. v. Smatresk*,
    73 F.4th 304 (5th Cir. 2023) .......................................................................17

*Zemel v. Rusk*,
    381 U.S. 1 (1965) ........................................................................................12

**Statutes**

42 U.S.C. § 7401 ...............................................................................................14

42 U.S.C. § 7413 ...........................................................................................6, 15

42 U.S.C. § 7416 ...............................................................................................15

42 U.S.C. § 7604(a) ..........................................................................................15

La. R.S. § 30:2025 .........................................................................................9, 10

La. R.S. §  30:2026 .............................................................................................9

La. R.S. § 30:2351.5 ...........................................................................................3

La. R.S. § 2361.6 ................................................................................................3

La. R.S. §  30:2361.9 ..........................................................................................3

La. R.S. § 30:2381.1 ...........................................................................................1

La. R.S. § 30:2381.2 ......................................................................................2, 12

La. R.S. § 30:2381.3 ...........................................................................................2

La. R.S. § 30:2381.5 ......................................................................................2, 12

La. R.S. § 30:2381.7 ...........................................................................................3

La. R.S. § 30:2381.8 ...........................................................................................3

La. R.S. § 2381.10 ..........................................................................1, 2, 3, 13, 15

La. R.S. § 2381.11 ..............................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) .................................................................................4, 5, 6, 11, 17

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5, 11, 17

Pub. L. No. 117-2, § 6002(a)(2), 135 Stat. 4, 93 ...................................................... 14, 16

Pub. L. No. 117–169, § 60105, 136 Stat. 1818, 2067 (2022) .................................... 14, 16

U.S. CONST. art. VI ..........................................................................................................14

## INTRODUCTION

In 2023, the Louisiana Legislature enacted the Community Air Monitoring Reliability Act (CAMRA) to establish technical and evidentiary standards for the data used in actions to enforce air quality, where the State has primary enforcement authority. *See* La. R.S. §§ 30:2381.1–2381.11 (enacted as Act No. 181 of the 2023 Regular Legislative Session). The framework is simple: CAMRA dictates the quality of monitoring data that may serve as the basis for enforcement proceedings. In no way does it prohibit community monitoring or the dissemination of that information.

Yet Plaintiffs, all environmental advocacy organizations, claim that CAMRA causes them constitutional harm by prohibiting their monitoring and dissemination of air quality data. ECF No. 1 (Compl.) ¶¶ 58–86. According to Plaintiffs, they all previously monitored and disseminated air quality data. *Id.* But, once CAMRA was enacted, they all ceased monitoring and disseminating air quality data for fear of civil liability and penalties. *Id.* This harms them, apparently, because they are prohibited from monitoring and disseminating data, and thus unable to achieve their organizational purposes of providing their communities information and education. *Id.* This, in turn, allegedly violates their rights to free speech and petition the government and their ability to comply with the federal Clean Air Act (CAA) and federal funding statutes. Compl. ¶¶ 87–108.

Plaintiffs' claims face an insurmountable flaw: CAMRA *does not prohibit* any of Plaintiffs' desired or alleged conduct. Plaintiffs are free to continue monitoring air quality in their communities. They are free to disseminate that data. And they are free to educate their communities based on that data. CAMRA's prohibitions only kick in when the data is being collected and used *for the purpose* of alleging violations or noncompliance with governing law. La. R.S. § 30:2381.10. Nowhere in their Complaint do Plaintiffs allege that they are collecting data for the purpose of alleging violations—which, again, is all CAMRA prohibits. Instead, their focus is on community education and outreach. Their claims

1

are thus fundamentally misaligned with the actual scope and requirements of CAMRA. The Court should dismiss their suit for lack of jurisdiction or failure to state a plausible claim.

*First*, the cleanest resolution here is dismissal for want of jurisdiction. Plaintiffs' claims have an overarching standing problem: Their alleged injuries are self-imposed, not traceable to the Defendants (let alone the statute they are challenging), and not redressable by a favorable court ruling. Moreover, all Defendants are entitled to sovereign immunity, and *Ex parte Young* offers no refuge.

*Second*, if this Court is inclined to reach the merits, Plaintiffs have failed to state a plausible First Amendment or preemption claim. CAMRA regulates the evidentiary use of community air monitoring data in state enforcement—not the right to speak, publish, or advocate. The statute is content-neutral, viewpoint-neutral, and falls squarely within Louisiana's sovereign authority to structure its own environmental enforcement framework. Plaintiffs' preemption theory fares no better. CAMRA neither conflicts with nor frustrates the purposes of the CAA, the American Rescue Plan Act (ARP), or the Inflation Reduction Act (IRA). Dismissal is plainly warranted.

## BACKGROUND

CAMRA was enacted "to establish standards for community air monitoring programs operated by entities to ensure that the data collected from such programs provides the public with access to accurate air quality information." La. R.S. § 30:2381.2. It does not apply to all persons or organizations—only to those "entities that have implemented community air monitoring programs" (CAM Programs) that "conduct monitoring" of air quality "*for the purpose of alleging violations or noncompliance*" with federal and state law. *Id.* §§ 30:2381.3, 30:2381.5(A) (emphasis added); *id.* 30:2381.10(C) ("The prohibitions under this Section apply to use by [Louisiana's Department of Environmental Quality (DEQ)] or any person of any monitoring data not in compliance with this Chapter *for purposes of alleging violations or noncompliance* with [any law or regulation] for which the state has primary enforcement authority." (emphasis added)).

2

CAMRA is intended to weed out any sub-standard data. As such, CAM Programs that seek to allege violations must "use the science-based standards set forth" in federal law or an "[EPA]-approved or promulgated emission test or monitoring method, or the latest revision to such methods[.]" *Id.* § 30:2351.5(A), (B); *see also id.* § 2361.6 (further describing data collection integrity standards); § 30:2361.9 (describing requirements for release of CAM Program data). DEQ "may use the data collected … to review compliance with the state's promulgated air monitoring requirements as part of its assessment of compliance with the air quality standards" and take relevant action to address any issues. *Id.* §§ 30:2381.7, 30:2381.8.

CAMRA sets out two limitations on the use of monitoring data to instigate enforcement proceedings. First, "[d]ata produced from community air monitoring programs alone is insufficient to demonstrate that a stationary source is in violation of rule, regulation, or permit condition." *Id.* § 2381.10(A). Second, "to promote … the collection of accurate and reliable data from community air monitoring programs," CAMRA limits the data that *DEQ* can "use[], disclose[], or disseminate[]," to issue "a fine, penalty, or violation against any person, including the owner or operator of a stationary source" or bring "an administrative, regulatory, or judicial enforcement action or proceeding." *Id.* § 2381.10(B)(1)–(2). CAMRA's prohibitions apply *only* to CAM Programs that seek to monitor air quality for the purposes of alleging violations or noncompliance. *Id.* § 2381.10(C). All together, CAMRA has a narrow and legitimate focus: The data collected, used, and disseminated by CAM Programs—for the purpose of alleging violations or noncompliance with governing law—must be accurate.

Plaintiffs are a collection of environmental advocacy organizations. Compl. ¶¶ 1, 9–14. On May 22, 2025, they sued Louisiana Attorney General Elizabeth Murrill, DEQ Secretary Courtney J. Burdette, and DEQ Assistant Secretary Jerry Lang, all in their official capacities, to declare CAMRA unconstitutional and enjoin its enforcement. Compl. ¶¶ 1–5.

Plaintiffs allege that they previously collected air quality data using sensors and monitors, all but one of which fall short of CAMRA's requirements. *See* Compl. ¶¶ 59, 65, 70, 75, 84–85 (JOIN uses an EPA-approved device). All allege that they have voluntarily stopped monitoring and disseminating data to avoid potential penalties and other unspecified consequences under CAMRA. *See* Compl. ¶¶ 59, 66, 70–71, 77, 81, 85. And all allege they would resume monitoring and disseminating data, thus achieving their organizational purposes, if CAMRA were declared unconstitutional. *See* Compl. ¶¶ 61–62, 67, 72, 78, 82, 86. More specifically, Plaintiffs assert three causes of action: (1) violation of the First Amendment right to free speech (Compl. ¶¶ 87–97); (2) violation of the First Amendment right to petition the government (Compl. ¶¶ 98–103); and (3) preemption under federal environmental statutes, including the Clean Air Act, the American Rescue Plan Act, and the Inflation Reduction Act (Compl. ¶¶ 104–08). Plaintiffs seek declaratory and injunctive relief. *See* Compl. Prayer for Relief.

Plaintiffs' Complaint is replete with examples of monitoring air quality and disseminating that data for community engagement and education—none of which is prohibited by CAMRA. Notably absent, however, is any indication that Plaintiffs intend to use their data to allege violations of governing law. Nor is there any indication that Plaintiffs intend to violate CAMRA, or that they face a threat of enforcement of CAMRA's requirements against them. For the following reasons, the Court should dismiss the entirety of Plaintiffs' Complaint.

## LEGAL STANDARDS

**Dismissal for Lack of Jurisdiction.** Rule 12(b)(1) permits a party to raise fatal jurisdictional defects early. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *In re FEMA Trailer*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). When "a Rule 12(b)(1) motion is filed," "the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Standing and sovereign immunity are jurisdictional questions

to be considered first when raised in a Rule 12(b)(1) motion. *See Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (standing); *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (sovereign immunity).

Plaintiffs, as "the part[ies] asserting jurisdiction," "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). On a factual attack under Rule 12(b)(1), "no presumptive truthfulness attaches to the … allegations." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. May 1981) (quotation omitted).

**Dismissal for Failure to State a Claim.** Dismissal is also proper where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (citation modified); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021). Well-pleaded facts are taken as true, while "conclusory allegations, unwarranted factual inferences, [and] legal conclusions" are not. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Once the complaint is stripped to its "well-pleaded facts," those alone "must make relief plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). A claim is only facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (citation omitted).

## ARGUMENT

The Court need do no more than dismiss Plaintiffs' Complaint, without prejudice, for lack of subject matter jurisdiction because precedent governing standing and sovereign-immunity directly forecloses the Complaint. Even if the Court had jurisdiction, the Complaint must be dismissed under Rule 12(b)(6) because Plaintiffs do not state a plausible First Amendment or preemption claim.

I.     **The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1) For Lack of Subject Matter Jurisdiction.**

The Court lacks jurisdiction to hear Plaintiffs' claims because (A) they lack Article III standing, and (B) Attorney General Murrill, Secretary Burdette, and Assistant Secretary Lang all are entitled to sovereign immunity.

### A.     Plaintiffs Lack Article III Standing.

Plaintiffs "bear[] the burden of establishing standing as of the time [they] brought th[e] lawsuit and maintaining it thereafter." *Carney v. Adams*, 592 U.S. 53, 59 (2020). Each Plaintiff "must show that [it] has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). And that showing must extend to "'each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). Plaintiffs fail every step of the way.

First, Plaintiffs do not have an injury in fact. An injury must be "'concrete,' meaning that it must be real and not abstract." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *TransUnion*, 594 U.S. at 424). It must also be particularized, meaning "the injury must affect the plaintiff in a personal and individual way and not be a generalized grievance," and imminent, meaning "the injury must have already occurred or likely to occur soon." *Id.* (quotation omitted). As explained *supra*, CAMRA *does not prohibit* Plaintiffs from collecting air monitoring data, sharing it publicly, or engaging in advocacy. Plaintiffs remain free to submit air quality complaints to state and federal regulators, and, as explained *infra*, CAMRA does not prevent EPA from receiving or acting on such information under the CAA. *See* 42 U.S.C. § 7413.

Plaintiffs' asserted injuries arise not from any restraint imposed by CAMRA, but from their own voluntarily decision to cease monitoring and dissemination. That is likely rooted in their

6

dissatisfaction that noncompliant data may not carry legal effect in state enforcement proceedings.[1] Plaintiffs might have "a general legal, moral, ideological, or policy objection to a particular government action," but that is not sufficient to establish Article III standing. *All. for Hippocratic Med.*, 602 U.S. at 381. Plaintiffs have failed to assert any current or impending injury. *See id.* at 394–95 (explaining an organization cannot "manufacture its own standing" by creating its own harm); *see also Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

For the same reason, Plaintiffs also have a traceability problem. Traceability calls for, at minimum, causation in fact. *See All. for Hippocratic Med.*, 602 U.S. at 382 ("The plaintiff must also establish that the plaintiff's injury likely was caused … by the defendant's conduct."); *TransUnion*, 594 U.S. at 423 ("[T]he injury was likely caused by the defendant."). "[T]he causation requirement screens out plaintiffs who were not injured by the *defendant's action*." *All. for Hippocratic Med.*, 602 U.S. at 383 (emphasis added). Here, none of Plaintiffs' alleged injuries is traceable to the challenged statute—let alone to the Defendants themselves. *See id.* at 382; *Murthy*, 603 U.S. at 69 n.8; *Clapper*, 568 U.S. at 409.

Finally, Plaintiffs face a redressability problem. That is unsurprising because "causation and redressability [] are often 'flip sides of the same coin.'" *All. for Hippocratic Med.*, 602 U.S. at 380 (citation omitted); *id.* at 381 ("If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."). "Article III grants federal courts the power to redress

---

[1] The pre-enforcement nature of their First Amendment claims does not change this analysis. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 778 (2024) (Alito, J., concurring) (facial challenges "strain the limits of the federal courts' constitutional authority to decide only actual 'Cases' and 'Controversies'"). In that context, "[a] plaintiff has suffered an injury in fact if he (1) has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably ... proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) (citation omitted), *cert. denied sub nom. Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024). The problem remains the same: CAMRA does not "proscribe" their conduct. *See Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008).

harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)). When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas*, 926 F.3d at 332. And that is the case here. The Complaint fails to allege an Article III injury-in-fact, let alone an injury traceable to a particular Defendant. Accordingly, "there is no injury for [this] federal court to redress." *Id.*

### B. Plaintiffs' Claims are Barred by Sovereign Immunity.

The claims against the Defendants also must be dismissed because all are entitled to sovereign immunity. "In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). That jurisdictional bar extends to state officials where the relief sought would operate against the State itself. *Id.* Attorney General Murrill, Secretary Burdette, and Assistant Secretary Lang are all state officials sued only in his or her "official capacity." Compl. ¶ 1. Accordingly, the claims against these Defendants "are effectively suits against a state," which are barred under the Eleventh Amendment. *City of Austin*, 943 F.3d at 997.

Plaintiffs could avoid that bar only by invoking the *Ex parte Young* equitable exception, which "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law," *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022), but only when that state official has a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty," *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Two problems.[2]

---

[2] Three, really, as it is an open question within this Circuit as to whether *any* plaintiff can bring official-capacity claims under Section 1983. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 311–14 (5th Cir. 2021) (Oldham, J. explaining the theory) (vacated); *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 948 n.4 (vacating but "leav[ing] that question open for later consideration").

*First, a duty to enforce.* Plaintiffs have not alleged that any of the Defendants has a "particular duty to enforce" CAMRA. Plaintiffs merely state that the state officials "share responsibility for enforcing" CAMRA. Compl. ¶ 1; *see* Compl. ¶ 15 ("[Secretary Burdette] is the state official responsible for enforcing CAMRA."); ¶ 16 ("[Assistant Secretary Lang may enforce CAMRA through the issuance of orders requiring compliance within CAMRA."); ¶ 17 ("[Attorney General Murrill] shares responsibility for enforcement of CAMRA through civil actions.").

"What constitutes a sufficient connection to the enforcement is not clear from [this Circuit's] jurisprudence." *City of Austin*, 943 F.3d at 999 (quotation omitted). "But some guideposts have emerged" from caselaw. *Scott*, 28 F.4th at 672–74. For example, a generalized duty to uphold state law is not sufficient. *City of Austin*, 943 F.3d at 1002–03. Neither is a mere speculative fear of possible future enforcement. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020). Instead, "the official must be statutorily tasked with enforcing the challenged law." *Id.* at 179 (quotation omitted) ("enforcement typically means 'compulsion or constraint'").

Plaintiffs fail to cite any authority for their bald statements regarding enforcement. Nor could they—notably absent from CAMRA is any form of enforcement mechanism or penalties. At most, Plaintiffs vaguely reference DEQ's general enforcement authority. *See* Compl. ¶ 56 ("Community groups that do not comply with CAMRA's requirements face civil penalties, injunctions and cease and desist orders, and damages liability.") (citing La. R.S. § 30:2025)); *see also* Compl. ¶ 57 (enforcement through *private parties* under Revised Statute § 30:2026). Secretary Burdette and Assistant Secretary Lang do have general enforcement power "to carry out the provisions" of the Environmental Quality subtitle. *See generally* La. R.S. § 30:2025.

---

Here, Plaintiffs chose to "invoke only" Section 1983 and "never once mentioned the equitable cause of action recognized in *Ex parte Young*," which would be insufficient under Judge Oldham's theory. *Mack*, 4 F.4th at 312.

9

But Attorney General Murrill's connection to the CAMRA is merely to "represent" the Secretary. *Id.* § 2025(A). And she has discretion in doing so—she can "decline" or "not respond to the secretary's request for representation." *Id.* Such "[d]iscretionary authority to act, on its own, is insufficient to give rise to a particular duty to act, i.e., a 'sufficient connection [to] enforcement.'" *Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024) (quoting *City of Austin*, 943 F.3d at 998); *see Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 752 (E.D. La. 2013) ("The Attorney General's sweeping responsibility to enforce the laws of the State of Louisiana lacks the *Ex parte Young* specificity nexus between the Attorney General and the alleged unconstitutional provisions that is essential to defeat sovereign immunity."); *White Hat v. Murrill*, 141 F.4th 590, 600 (5th Cir. 2025) (Louisiana Attorney General's "obligation to act as 'prosecutorial and supervisory authority in legal cases' … standing alone, is insufficient because an official must have more than a 'general duty to see that the laws of the state are implemented' to trigger the *Ex Parte Young* exception" (citation omitted)). The Attorney General is thus entitled to sovereign immunity.

*Second, a demonstrated willingness.* Plaintiffs have not alleged that any sort of enforcement has occurred here. "That is fatal, because [the Fifth Circuit] requires 'specific enforcement action of the *respective defendant state officials*' to apply the *Ex Parte Young* exception." *White Hat*, 141 F.4th at 601 (quoting *City of Austin*, 943 F.3d at 1001 (emphasis in original) (collecting cases with state officials that "prohibit[ed] payment of claims," participated in "rate-setting," and "sen[t] letters threatening formal enforcement."); *Nat'l Press Photographers Ass'n*, 90 F.4th at 786 ("Defendants lack 'a demonstrated willingness to exercise [their] duty' to enforce [the statute].").

Here, Plaintiffs allege no enforcement action or threat from any Defendant. They do not claim to have received a compliance order, notice of violation, or any communication from any Defendant. In fact, Plaintiffs affirmatively allege that they used PurpleAir monitors and other non-EPA certified devices. *See, e.g.*, Compl. ¶¶ 59–61. Yet they do not allege that DEQ took or threatened any

enforcement action against them for that monitoring. Put simply, "here there is not even a scintilla of enforcement. Not even an iota of a scintilla. Zilch." *Nat'l Press Photographers Ass'n*, 90 F.4th at 786 (explaining that the nature of First Amendment pre-enforcement challenges "does not necessarily conflict with the fact that Defendants have not shown a demonstrated willingness to exercise their enforcement duties under *Ex parte Young*").

"At bottom," because Plaintiffs have not shown that the Defendants "hold[] 'a demonstrated willingness to exercise'" any enforcement duty, "the *Ex Parte Young* exception to sovereign immunity does not apply." *White Hat*, 141 F.4th at 601 (quoting *Tex. Democratic Party*, 978 F.3d at 181); *Nat'l Press Photographers Ass'n*, 90 F.4th at 787. Sovereign immunity therefore bars Plaintiffs' claims against all Defendants, and the Complaint must be dismissed under Rule 12(b)(1).

## II.     The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(6) For Failure To State a Claim For Relief.

If the Court proceeds to the merits, Plaintiffs' failure to state a claim for relief under the First Amendment (Counts I and II) and their theory of federal preemption (Count III) warrants dismissal of the Complaint with prejudice under Rule 12(b)(6).

### A.    Plaintiffs Fail to State a First Amendment Claim (Free Speech and Petition).

Plaintiffs contend that CAMRA infringes their First Amendment rights to free speech and petition. *See* Compl. ¶¶ 87–103. But the Complaint fails to allege a plausible First Amendment violation because the Act regulates the use of air quality data in legal enforcement, not the expression of ideas or the right to petition the government.

**1.** Plaintiffs' free speech arguments fail because CAMRA does not regulate speech—it regulates conduct. The Fifth Circuit's reasoning in *National Press Photographers Association v. McCraw* is controlling. There, plaintiffs challenged Texas' "No-Fly" provisions that regulated where drones could permissibly fly, arguing the regulations violated their First Amendment rights. *Nat'l Press Photographers*

*Ass'n*, 90 F.4th at 777. The Court flatly rejected that facial argument because "[t]he operation of a drone is not inherently expressive" and "nothing in the No-Fly provisions ha[d] anything to do with speech or expression." *Id.* at 787–88. The provisions were "flight restrictions, not speech restrictions." *Id.* at 788. Plaintiffs' claims thus "falter[ed] because 'only conduct that is inherently expressive is entitled to First Amendment protection.'" *Id.* at 787 (quoting *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013)).

So too, here, as CAMRA has nothing to do with the First Amendment. CAMRA's stated purpose is "to establish standards for community air monitoring programs operated by entities to ensure that the data collected from such programs provides the public with access to accurate air quality information." La. R.S. § 30:2381.2. To that end, CAMRA requires certain scientific standards and methods when community monitoring data is used to allege "violations or noncompliance with the federal Clean Air Act, Louisiana Environmental Quality Act, or any other applicable law." *Id.* § 30:2381.5(A). None of CAMRA's provisions restrict Plaintiffs from collecting or sharing air monitoring data, criticizing environmental conditions, or petitioning the government. Instead, the statute ensures that enforcement actions brought by the State rest on scientifically reliable data. That regulatory function does not burden speech or expressive activity.

Plaintiffs' "attempt to convert [CAMRA] into speech regulations" cannot succeed. *See Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965) ("There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow."). "Because [CAMRA has] nothing to do with speech or even expressive activity, [it] do not implicate the First Amendment." *See Nat'l Press Photographers Ass'n*, 90 F.4th at 788. That is dispositive of the free speech claim.

At most, CAMRA "has 'only an incidental effect on protected speech,' making it subject to intermediate scrutiny." *Free Speech Coal., Inc. v. Paxton,* No. 23-1122, 2025 WL 1773625, at *8 (U.S. June 27, 2025) (quoting *Boy Scouts of America v. Dale*, 530 U.S. 640, 659 (2000)); *U.S. v. O'Brien*, 391 U.S. 367,

376 (1968) ("[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."). CAMRA readily surpasses this standard of review, as it "'advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *See id.* at *5 (quoting *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 189 (1997)). Further, CAMRA is content and view-point neutral—it applies uniformly to all community monitoring programs that do not meet standardized data quality criteria, whether they support environmental enforcement or industry defenses. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). CAMRA's evidentiary limitations on air quality data do nothing more than incidentally burden Plaintiffs' speech. Accordingly, Plaintiffs' free speech claim must fail.

**2.** Plaintiffs' Petition Clause theory also fails. "[T]he Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). But "[n]othing in the First Amendment or [Supreme Court] case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984). CAMRA does not preclude Plaintiffs from submitting complaints, petitions, or public comments to regulators; it merely establishes that certain noncompliant data will not be treated as legally sufficient by DEQ for the purpose of initiating enforcement proceedings. *See* La. R.S. § 30:2383.10. That limitation does not violate the Petition Clause because it neither denies access to governmental forums nor penalizes Plaintiffs for engaging in petitioning activity.

Plaintiffs have failed to state a viable First Amendment claim, so those claims must be dismissed.

### B. Plaintiffs Fail to State a Claim for Preemption.

Plaintiffs assert that CAMRA is preempted by federal law, specifically the CAA (42 U.S.C. §§ 7401 et seq.), the ARP (Pub. L. No. 117-2, § 6002(a)(2), 135 Stat. 4, 93), and the IRA (Pub. L. No. 117–169, § 60105, 136 Stat. 1818, 2067 (2022)). *See* Compl. ¶¶ 104–08. However, none of these statutes expressly or impliedly preempt CAMRA. Plaintiffs fail to plausibly allege that CAMRA conflicts with or obstructs the execution of federal law, and they offer no statutory text indicating a "clear and manifest" congressional intent to preempt the state law. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Their claim fails under settled principles of preemption jurisprudence.

**1.** Preemption is disfavored. Federal preemption is rooted in the Supremacy Clause. U.S. CONST. art. VI, ¶ 2. But it is not "lightly found," particularly where states and the federal government pursue parallel objectives. *Iberia Credit Bureau, Inc. v. Cingular Wireless*, 668 F. Supp. 2d 831, 837 (W.D. La. 2009) (citing *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597 (1991)). "The party asserting federal preemption has the burden of persuasion." *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011). And that burden is a heavy one. *Wyeth v. Levine*, 555 U.S. 555, 565–69 (2009).

In areas of traditional state regulation, like environmental enforcement and evidentiary standards, the burden is even greater. Courts must presume "that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Lohr*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "Respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state-law causes of action.'" *Wyeth*, 555 U.S. at 565 n.3 (quoting *Lohr*, 518 U.S. at 485).

**2.** CAMRA does not conflict with the CAA. Plaintiffs cite 42 U.S.C. § 7413, which authorizes the EPA to "bring a civil action whenever, on the basis of any information available," it finds a violation. *See* Compl. ¶¶ 26, 54, 106. But nothing in CAMRA limits EPA's authority to access or act on "any information." The statute regulates only how *Louisiana*—through DEQ—uses certain community-collected air data in its own enforcement proceedings. *See* La. R.S. § 30:2383.10(B) (prohibiting the use of noncompliant data by the department "to support the assessment of civil or criminal penalties").

Likewise, Plaintiffs cite the CAA's citizen suit provision, 42 U.S.C. § 7604(a)(1), which allows "any person" to sue for violations of "an emission standard or limitation." *See* Compl. ¶¶ 26, 55. But nothing in CAMRA bars Plaintiffs from filing suit under § 7604. It merely provides that data from noncompliant monitoring programs is not independently sufficient under state law to prove a violation or trigger penalties. *See* La. R.S. § 30:2383.10(A). That is a permissible procedural regulation—not a substantive conflict.

Moreover, the Clean Air Act explicitly preserves the States' authority:

> Except as otherwise provided [elsewhere in] this title (preempting certain State regulation of moving sources) nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that if an emission standard or limitation is in effect under an applicable implementation plan or under section 7411 or section 7412 of this title, such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under such plan or section.

42 U.S.C. § 7416. This provision affirms Congress's intent to preserve broad state authority in the field of air pollution control, except in narrow circumstances related to mobile sources or federally mandated emission standards. CAMRA does not impose any emission limit or standard, nor does it purport to alter Louisiana's implementation plan under the CAA. Rather, it governs the evidentiary

requirements for when community-collected air monitoring data may be used to allege violations under state law.

The Supreme Court has warned that courts must not conduct "a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011) (citation omitted). "For a state law to be conflict preempted, a high threshold must be met." *Barrosse v. Huntington Ingalls, Inc.*, 70 F.4th 315, 320 (5th Cir. 2023) (citation modified). Plaintiffs fall well short of that threshold.

**3.** Nor does CAMRA conflict with the federal funding provisions in the ARP or the IRA. Neither statute includes any preemption clause. Both provide *funding* for environmental monitoring projects; neither mandates the use of any particular data in legal enforcement or prescribes standards governing state evidentiary rules.

The ARP authorizes funding to EPA to "address health outcome disparities from pollution," including "for grants and activities." ARP Act § 6002, 135 Stat. 4, 93 (2021). The IRA similarly authorized funds "to deploy, integrate, support, and maintain fenceline air monitoring ... and other air toxics and community monitoring." IRA § 60105, 136 Stat. 1818, 2067 (2022). The mere fact that a federal law regulates the how or why of a particular activity does not render state laws concerning other aspects of that activity preempted. *See Lasko v. Consumers Petroleum of Conn., Inc.*, 547 F. Supp. 211, 218 (D. Conn. 1981) (holding that a state law affecting when a gas station franchisee may be subject to nonrenewal by the franchisor was not preempted by the federal Petroleum Marketing Practices Act, which governs how or why a franchisee is terminated or not renewed).

Neither statute contains an express preemption clause. Plaintiffs do not point to any provision suggesting that Congress intended to deprive States of their traditional power to regulate what type of evidence can support enforcement proceedings under state law.

**4.** CAMRA fills a permissible regulatory space (a state-level regulatory gap) by providing evidentiary standards for community monitoring data when used to allege legal violations. That kind of regulation is not only permissible, it is expected. *See English v. Gen. Electric Co.*, 496 U.S. 72, 79 (1990) (field preemption arises where the "scheme of federal regulation ... [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" (citation modified)).

As the Fifth Circuit has emphasized, conflict preemption does not apply unless compliance with both laws is impossible or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (citation modified). Neither is true here. Plaintiffs can fully comply with CAMRA, and the federal government can fully execute its air quality mandates.

## CONCLUSION

For these reasons, the Court should dismiss the Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim under which relief can be granted.

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY:      /s/ *Amanda M. LaGroue*

Carey T. Jones (#07474)
Amanda M. LaGroue (#35509)
Tanika L. Starks (#38902)
Assistant Attorneys General
Louisiana Department of Justice
P.O. Box 94005

Baton Rouge, LA 70802
Telephone: (225) 326-6060
Facsimile: (225) 326-6098
Email: jonescar@ag.louisiana.gov
       LaGroueA@ag.louisiana.gov
       starkst@ag.louisiana.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 18th day of July, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

/s/ *Amanda M. LaGroue*
AMANDA M. LAGROUE