UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RISE ST. JAMES LOUISIANA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COURTNEY J. BURDETTE, in her official capacity as Secretary of the Louisiana Department of Environmental Quality, et al.,<br><br>    Defendants. | Civil Action No. 3:25-cv-00429-JWD-RLB |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(b)(1), Plaintiffs hereby submit the following Statement of Material Facts Not in Dispute in support of Plaintiffs' cross-motion for summary judgment.

1.    The Clean Air Act and associated state clean air laws seek to improve air quality and public health by regulating air pollution emitted from industrial operations. *See* 42 U.S.C. §§ 7401–7416; La. A.C. Title 33, Part III.

2.    The Environmental Protection Agency (EPA) has established technical standards for air monitoring systems that detect levels of air pollution in the ambient air for regulatory purposes. 40 C.F.R. Parts 50, 53, 58.

3.    Air monitors used for regulatory purposes are expensive to deploy and operate, costing several hundred thousand dollars to obtain and operate. Joshi Decl., Ex. 1 – 2025 LDEQ Report 16.

4.    EPA has encouraged deployment and use of low-cost air sensors to help communities monitor air quality, including in areas not covered by regulatory air monitors. *Id.*, Ex. 2 – Air Sensor Guidebook 2–6, 26; *id.*, Ex. 3 – EPA Q&A.

5. EPA has funded research to assist communities in using low-cost air sensors to measure air quality. *Id.*, Ex. 4 – EPA Request for Applications 2.

6. EPA operates a loan program under which groups in Louisiana may obtain air sensors. *Id.*, Ex. 5 – EPA Air Sensor Loan Program 15–16.

7. EPA has issued grants to support community air monitoring programs through funding made available by Congress. American Rescue Plan of 2021, Pub. L. No. 117-2, § 6002(a)(2), 135 Stat. 4, 93; Inflation Reduction Act, Pub. L. No. 117–169, § 60105, 136 Stat. 1818, 2067 (2022); 42 U.S.C. § 7438; Joshi Decl., Exs. 6 and 7.

8. EPA may bring an administrative or judicial action based on any information "available" to enforce federal emissions standards. 42 U.S.C. § 7413(a), (b), (d).

9. EPA may pay an award to "any person who furnishes information" leading to a criminal conviction or a judicial or administrative civil penalty. *Id.* § 7413(f).

10. Any person may bring a civil action against polluters that violate emission, after first providing 60 days' notice to EPA and the relevant state. *Id.* § 7604.

11. The Community Air Monitoring Reliabilty Act (CAMRA) "establish[es] standards for community air monitoring programs operated by entities to ensure that the data collected from such programs provides the public with access to accurate air quality information." La. R.S. § 2381.2.

12. CAMRA requires community air monitoring programs to collect air quality data using EPA-designated methods applicable to regulatory air monitors, but only when monitoring air quality for the purpose of "alleging violations of or noncompliance with" federal or state clean air laws. *Id.* § 30:2381.5.

13. CAMRA imposes requirements on how community air monitoring programs may use collect and analyze air quality data. *Id.* § 30:2381.6.

14. These requirements include a mandate that compels community groups to include a "quality assurance certification of methods or equipment" when disseminating analysis not performed by a state-accredited laboratory. *Id.*

15. These requirements apply to all air monitoring data collected by community air monitoring programs, regardless of the purpose for which the data was collected. *Id.*

16. CAMRA provides that "[a]ny release or communication of the collected monitoring data shall include clear explanations of data interpretation, appropriate context, including the applicable or comparable ambient air standard data limitations, and relevant uncertainties." *Id.* § 30:2381.9.

17. This requirement applies to all air monitoring data collected by community air monitoring programs, regardless of the purpose for which the data was collected. *Id.*

18. CAMRA provides that community air monitoring data is "insufficient" to prove a violation against a stationary source. *Id.* § 30:2381.10.A.

19. CAMRA does not diminish the evidentiary value of air monitoring data collected by entities not subject to CAMRA. *Id.*

20. CAMRA prohibits the Louisiana Department of Environmental Quality (LDEQ) from using, disclosing or disseminating "data produced from community air monitoring programs that are not in compliance with [CAMRA]" "for purposes of or in support of … [i]ssuing a fine, penalty, or violation," or "[b]ringing an administrative, regulatory, or judicial enforcement action or proceeding" against air polluters. *Id.* § 30:2381.10.B.

21. This prohibition applies "to use by … any person of any monitoring data not in compliance with [CAMRA] for purposes of alleging violations or noncompliance with" federal or state clean air laws. *Id.* § 30:2381.10.C.

22. CAMRA thus prohibits a community group from using, disclosing, or disseminating air monitoring data that does not comply with CAMRA's requirements to LDEQ or EPA for purposes of or in support of federal or state enforcement actions. *Id.*

23. CAMRA also prohibts a community group from using, disclosing, or disseminating air monitoring data that does not comply with CAMRA's requirements in connection with "citizen suit" actions under the Clean Air Act and the required 60-day pre-suit notification to EPA and the relevant state agency. *Id.*; *see* 42 U.S.C. § 7604.

24. As LDEQ secretary, Defendant Courtney J. Burdette has a statutory responsibility to bring civil actions necessary to carry out CAMRA's requirements. La. R.S. 30:2025.A, .C(3).

25. As assistant secretary for the office of environmental compliance at LDEQ, Defendant Jerry Lang has a statutory responsibility to issue orders requiring compliance with CAMRA. *Id.* § 30:2025.C(3).

26. As attorney general of Louisiana, Defendant Liz Murrill has a specific statutory responsibility to represent the LDEQ secretary in civil actions to enforce CAMRA. *Id.* § 30:2025.A.

27. If the attorney general fails to carry out that responsibility, LDEQ may use an agency attorney to intitate an enforcement action only if the attorney general concurs. *Id.*

28. Community groups that violate CAMRA face civil penalties of up to $32,500 per day and an additional $1 million penalty if the violation is intentional, willful, or knowing. *Id.* § 30:2025.E(1)(a).

29. Community groups that violate CAMRA face cease and desist orders from LDEQ and civil actions for appropriate relief, inlcuidng injunctive relief. *Id.* § 30:2025.C(3).

30. In February 2025, LDEQ issued a report entitled *Report: Louisiana Concurrent Resolution 30: To Study Implementation of Real-Time Community Air Monitoring and Notification Systems* (LDEQ Report). Joshi Decl., Ex. 1.

31. The LDEQ Report explains that the "primary purpose of community air monitoring is to provide accurate and timely information about air quality to surrounding communities, fostering transparency and promoting public health." *Id.*, at 16.

32. The LDEQ Report explains that CAMRA "establishes clear standards for non-governmental entities to conduct air quality monitoring" and "was created to establish standards for monitoring programs to ensure public access to accurate air quality information and requires that equipment, software, and methods for data collection and analysis use current EPA-approved testing and monitoring methods." *Id.*

33. The LDEQ Report explains that CAMRA "[r]equire[s] monitoring entities to provide clear and accessible explanations of their findings and data to the public." *Id.*

34. The description of CAMRA in the LDEQ Report confirms that CAMRA imposes substantive requirements on community air monitoring programs. *Id.*

35. Plaintiffs are community groups based in Louisiana that operate community air monitoring programs that are subject to CAMRA's requirements. Lavigne Decl. ¶¶ 1–2, 5–11; Robertson Decl. ¶¶ 1–2, 5–12; Banner Decl. ¶¶ 1–2, 7–13; Taylor Decl. ¶¶ 1–2, 4–12; Stelly Decl. ¶¶ 1–3, 6–9; Vittitow Decl. ¶¶ 1–11.

36. To monitor air quality, Plaintiffs use air sensor technology that does not comply with EPA standards for regulatory air monitors. Lavigne Decl. ¶ 6; Robertson Decl. ¶ 7; Banner Decl. ¶ 11; Taylor Decl. ¶¶ 7–8; Stelly Decl. ¶¶ 8–9; Vittitow Decl. ¶ 10.

37. Several plaintiffs conduct air monitoring to implement EPA grants. Robertson Decl. ¶ 8; Taylor Decl. ¶ 7; Stelly Decl. ¶ 6 & Ex. 1.

38. Plaintiff Micah 6:8, together with other organizations, received an EPA grant of $407,000 in 2022 under the American Rescue Plan to purchase, install, and operate air sensors in Sulphur, Louisiana. Robertson Decl. ¶ 8.

39. Under the terms of the grant, Micah 6:8 must operate and collect data from air sensors and provide reports on that data to EPA. *Id.*

40. Plaintiff Concerned Citizens of St. John Inc. (CCSJ) has partnered with Deep South Center for Environmental Justice to deploy air monitors pursuant to a $500,000 EPA grant. Taylor Decl. ¶ 7.

41. Plaintiff Claiborne Avenue Alliance Design Studio, Inc. (Claiborne) has partnered with Dr. Adrienne Katner at Louisiana State University to conduct air monitoring around Claiborne Avenue in New Orleans. Stelly Decl. ¶ 6 & Ex. 1.

42. Claiborne and Dr. Katner jointly received an EPA grant to purchase and distribute air sensors to local schools, conduct an air monitoring campaign, and disseminate particulate matter information through a database. *Id.* ¶¶ 6, 8.

43. Plaintiffs seek to disseminate air monitoring data to third parties, including members of the community and the public. Lavigne Decl. ¶¶ 6–9; Robertson Decl. ¶ 11; Banner Decl. ¶¶ 8, 11; Taylor Decl. ¶ 10; Stelly Decl. ¶ 4; Vittitow Decl. ¶¶ 7, 10.

44. Plaintiffs also seek to conduct air monitoring to determine whether to take legal or regulatory action if air pollution levels in excess of regulatory limits are detected. Lavigne Decl. ¶ 11; Robertson Decl. ¶ 11; Banner Decl. ¶ 12; Taylor Decl. ¶¶ 10, 12; Stelly Decl. ¶ 7; Vittitow Decl. ¶¶ 6, 8, 9.

45. Plaintiffs are subject to civil liability and penalties if their community air monitoring programs collect, use, and disseminate air quality data and analysis in a manner that does not comply with CAMRA's requirements. La. R.S. §§ 2025, 2381.5, 2381.6, 2381.9, 2381.10.

46. Because of the threat of civil liability and penalties under CAMRA, Plaintiffs have had to censor their communications on air quality data from air monitoring. Lavigne Decl. ¶¶ 6–11; Robertson Decl. ¶¶ 11–12; Banner Decl. ¶¶ 11–13; Taylor Decl. ¶¶ 10–12; Stelly Decl. ¶¶ 8–9; Vittitow Decl. ¶¶ 7–8, 10–11.

September 5, 2025

Respectfully submitted,

David Bookbinder
(DC Bar No. 455525)
Environmental Integrity Project
888 17th Street NW
Washington, DC 20006
(301) 751-0611
dbookbinder@environmentalintegrity.org
*Admitted pro hac vice*

Mariah Harrod
(TX Bar No. 24143847)
Environmental Integrity Project
888 17th Street NW
Washington, DC 20006
(856) 503-8645
mharrod@environmentalintegrity.org
*Admitted pro hac vice*

/s/ Caitlion O'Neill
Caitlion O'Neill
(LA Bar No. 40566)
RISE St. James Louisiana
2150 Allston Way
Suite 460
Berkeley, CA 94704
(504) 321-1360
chunter@risestjames.org

/s/ Nandan M. Joshi
Nandan M. Joshi
(DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-7733
njoshi@citizen.org
*Admitted pro hac vice*

7