UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RISE ST. JAMES LOUISIANA, MICAH SIX EIGHT MISSION, THE DESCENDANTS PROJECT, THE CONCERNED CITIZENS OF ST. JOHN INC., CLAIBORNE AVENUE ALLIANCE DESIGN STUDIO, INC., and JOIN FOR CLEAN AIR,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>COURTNEY J. BURDETTE, in her official capacity as Secretary of the Louisiana Department of Environmental Quality; JERRY LANG, in his official capacity as Assistant Secretary for Environmental Compliance at the Louisiana Department of Environmental Quality; and LIZ MURRILL, in her official capacity as Attorney General of Louisiana,<br><br>　　　　Defendants. | Case No. 3:25-cv-00429-JWD-RLB |

**DECLARATION OF JUSTIN VITTITOW**

I, Justin Vittitow, declare the following based on personal knowledge to which I am competent to testify:

1.　　I am a Co-Director and Co-Founder of JOIN for Clean Air ("JOIN"). In this role, I educate and organize my community about issues related to pollution and air monitoring. I gather information about pollution sources that affect my community, communicate this information through social media and in-person events, encourage residents to report noxious odors, and help JOIN monitor air pollution. Accordingly, I am familiar with the objectives, programs, and structure of JOIN.

1

2.  JOIN is a 501(c)(3) nonprofit incorporated in Louisiana. Its mailing address is 2351 Magazine Street, New Orleans, Louisiana 70130. JOIN is primarily a volunteer-based organization. I am the only member compensated for my work on behalf of JOIN.

3.  JOIN was founded as a grassroots community organization in late 2019 when residents in and around Harvey, Louisiana and the Irish Channel neighborhood of New Orleans began frequently reporting noxious petroleum odors to the Louisiana Department of Environmental Quality ("LDEQ"). JOIN members later learned that the onset of the noxious odor issue coincided with a major expansion at BWC Terminals, a nearby petrochemical storage and transport facility. Some of the residents experiencing these odors also reported experiencing headaches, migraines, dizziness, difficulty breathing, and burning of the eyes, nose, throat, and lungs. Many residents—including myself—have kids we want to protect from air pollution. The residents began meeting and ultimately incorporated as JOIN for Clean Air with the central purpose of improving air quality in the greater New Orleans area—for our health and our children's health.

4.  Pursuant to that mission, we publicly share information about pollution and air quality with community members through our website, social media, and in-person events. The ability to exercise our constitutionally protected right to free speech is central to JOIN's mission. Public communication about air quality allows us to better understand the extent and nature of odor events, encourages residents to report noxious odors, and educates our community about pollution and its sources.

5.  To further our mission, JOIN began monitoring $PM_{2.5}$ pollution on Earth Day in 2024. With the help of outside environmental experts, we installed a Teledyne API Model T640 PM Mass Monitor, an instrument designated by EPA as a Federal Equivalent Method ("FEM")

for PM$_{2.5}$, at a private residence in the Irish Channel neighborhood of New Orleans. That device tests for PM$_{2.5}$. We follow EPA protocols in operating the T640 monitor, including monthly verification checks, regular maintenance, and occasional troubleshooting.

6. We chose the Teledyne T640 because we wanted to evaluate whether air quality in our area is in attainment with the PM$_{2.5}$ NAAQS using an instrument EPA has designated as the gold standard for this purpose. In fact, LDEQ is currently upgrading most of its PM$_{2.5}$ equipment with the Teledyne T640 particulate monitors. If our results show that our area is not attaining the national ambient air quality standard over a three-year period, we want to use the data to educate our community about local PM$_{2.5}$ levels and to obtain a nonattainment designation from EPA. This designation would trigger regulatory actions that could help achieve our ultimate goal of reducing PM$_{2.5}$ pollution to healthy levels.

7. Due to CAMRA, we have decided not to publicly post any data or results from our community air monitoring project. Even though we are using gold-standard equipment and methodology, CAMRA imposes ambiguous requirements on what we must say about our data. Such a restriction undermines our work to arm community members with facts and to advocate against unhealthy pollution. Before JOIN was aware of CAMRA, we were speaking about our results in individual conversations with people outside of JOIN to encourage advocacy for improved air quality. We no longer have these conversations because we are concerned about facing financial penalties under CAMRA that could bankrupt our organization. Even if CAMRA allows LDEQ to consider our data in assessing PM$_{2.5}$ NAAQS compliance, we are worried that any attempt to share that data with them will be penalized for failing to comply with their interpretation of the details CAMRA requires to be included with the data.

8.     If the court ruled that CAMRA was illegal, JOIN would publicly post about its Teledyne PM$_{2.5}$ readings and use them to advocate for emissions restrictions.

9.     In August 2025, we began a second air monitoring project in Waggaman, Louisiana. Our members who live in this community experience intense and frequent odors that are sometimes accompanied by headaches, nosebleeds, coughing, irritated eyes and throats, and shortness of breath. The purpose of this monitoring project is to learn which chemicals in the ambient air are present concurrently with the odors and at what concentrations; to understand the range of health outcomes linked to chemical exposures at those concentrations; to attribute the presence of air pollutants to emissions sources; and to discover if the concentrations of pollutants in the ambient air exceed any state or federal air quality standard to pursue legal and other advocacy actions.

10.     The air monitor we installed for this second project is the Aeroqual AQS-1, which measures hydrogen sulfide (a toxic air pollutant), methane, and total VOC (a precursor to the criteria pollutant ozone) using sensors not listed as FEM for measuring those pollutants. This is a real-time instrument that measures pollutant concentrations continuously and publishes that information to the cloud every minute. JOIN assisted with the installation of the monitor and is observing the data using a password-protected website. We plan to alert the community if exposure to the measured pollutant concentrations suggests a health risk, though we are concerned that we may face penalties under CAMRA for doing so. Though these penalties are incredibly daunting, the harms our community would face from not knowing when our air quality is most dangerous is even more daunting.

11.     If the court ruled that CAMRA was illegal, JOIN would share any high pollutant readings from the Aeroqual with the community without fearing enforcement from the state.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

EXECUTED this 28 day of August 2025 in New Orleans, Louisiana.

_____
Justin Vittitow, Co-Director
JOIN for Clean Air