**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

RISE ST. JAMES LOUISIANA, et al.,

        Plaintiffs,

v.

COURTNEY J. BURDETTE, in her official
capacity as Secretary of the Louisiana
Department of Environmental Quality, et al.,

        Defendants.

Civil Action No. 3:25-cv-00429-JWD-RLB

## DEFENDANTS' COMBINED
## REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND
## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ...................................................................................................................1

ARGUMENT..........................................................................................................................2

I.   THIS COURT LACKS JURISDICTION OVER THIS CASE. .......................................................2

   A. Plaintiffs Lack Article III Standing. ..........................................................................2

   B. Plaintiffs' Claims Are Barred by Sovereign Immunity. ...........................................9

      i. The Attorney General has no enforcement connection to CAMRA. .......................10

      ii. Plaintiffs Failed to Establish That LDEQ Officials Have a Demonstrated
         Willingness to Enforce CAMRA Against Them. ...................................................10

II.  PLAINTIFFS' CLAIMS FAIL ON THE MERITS.....................................................................12

   A. Standards Governing FRCP 12(b)(6) and FCRP 56. .............................................12

   B. CAMRA Does Not Violate First Amendment Rights. ...........................................13

      i. CAMRA's Scope is Evidentiary, Not Speech-Regulating.....................................13

      ii. At Most, CAMRA Is a Permissible Content-Neutral Law That Incidentally
         Burdens Speech. ...............................................................................................14

      iii. Even if CAMRA Regulates Speech, It Does So Permissibly.................................15

      iv. CAMRA Does Not Restrict Petitioning. .............................................................17

   C. CAMRA Is Not Preempted by Federal Law. .........................................................19

CONCLUSION......................................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*ACORN v. Leblanc*,
211 F.3d 298 (5th Cir. 2000) ................................................................................5

*Allen v. Hays*,
65 F.4th 736 (5th Cir. 2023) ...............................................................................12

*Allen v. Wright*,
468 U.S. 737 (1984) ...............................................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................12

*Benfield v. Magee*,
945 F.3d 333 (5th Cir. 2019) ...............................................................................12

*Borough of Duryea v. Guarnieri*,
564 U.S. 379 (2011) .......................................................................................17, 18

*California Motor Transportation Co. v. Trucking Unlimited*,
404 U.S. 508 (1972) .............................................................................................18

*Carney v. Adams*,
592 U.S. 53 (2020) .................................................................................................7

*Casillas v. Madison Ave. Assocs., Inc.*,
926 F.3d 329 (7th Cir. 2019) .................................................................................7

*City of Morgan City v. S. La. Elec. Co-op. Ass'n*,
31 F.3d 319 (5th Cir. 1994) .................................................................................21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..........................................................................................4, 5

*Cozzo v. Tangipahoa Par. Council-President Gov't*,
279 F.3d 273 (5th Cir. 2002) .................................................................................9

*Deep S. Ctr. for Envtl. Just. v. EPA*,
138 F.4th 310 (5th Cir. 2025) .......................................................................2, 3, 5

*Ex parte Young*,
209 U.S. 123 (1908) ...............................................................................................9

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024) ..........................................................................................5, 6

*First National Bank of Boston v. Bellotti*,
435 U.S. 765 (1978) .............................................................................................16

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461, 145 S. Ct. 2291 (2025) .................................................................15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ...............................................................................................7

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ...............................................................................................3

*Haywood v. Drown*,
556 U.S. 729 (2009) .............................................................................................20

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ...............................................................................................21

*Hines v. Pardue*,
117 F.4th 769 (5th Cir. 2024) .............................................................................15

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ................................................................................................. 19
*Int'l Shortstop, Inc. v. Rally's, Inc.*,
  939 F.2d 1257 (5th Cir. 1991) .................................................................................. 12
*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ...................................................................................... 9
*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................... 3
*Mi Familia Vota v. Ogg*,
  105 F.4th 313 (5th Cir. 2024) ................................................................................... 10
*Minnesota State Bd. for Cmty. Colls. v. Knight*,
  465 U.S. 271 (1984) ................................................................................................. 18
*Ms. State Democratic Party v. Barbour*,
  529 F.3d 538 (5th Cir. 2008) ..................................................................................... 8
*NAACP v. City of Kyle*,
  626 F.3d 233 (5th Cir. 2010) ..................................................................................... 5
*National Press Photographers Association v. McCraw*,
  90 F.4th 775 (5th Cir. 2024) ............................................................................... 4, 14
*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ................................................................................... 11
*Oneok, Inc. v. Learjet, Inc.*,
  575 U.S. 373 (2015) ................................................................................................. 19
*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ................................................................................... 12
*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ................................................................................................. 15
*Robicheaux v. Caldwell*,
  986 F. Supp. 2d 749 (E.D. La. 2013) ....................................................................... 10
*Rosenberger v. Rector & Visitors of University of Virginia*,
  515 U.S. 819 (1995) ................................................................................................. 15
*Sherman v. Hallbauer*,
  455 F.2d 1236 (5th Cir. 1972) ................................................................................. 12
*Smith v. Arkansas State Highway Emps., Local 1315*,
  441 U.S. 463 (1979) ................................................................................................. 18
*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ..................................................................................... 4
*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................... 4, 8
*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) ................................................................................... 10
*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................................... 3, 7, 9
*Turner Broadcasting System, Inc. v. FCC*,
  512 U.S. 622 (1994) ................................................................................................. 16
*Turner Broadcasting System, Inc. v. FCC*,
  520 U.S. 180 (1997) ................................................................................................. 16
*United States v. O'Brien*,
  391 U.S. 367 (1968) ................................................................................................. 14

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,*
 454 U.S. 464 (1982) ..................................................................................................3
*Ward v. Rock Against Racism,*
 491 U.S. 781 (1989) ...............................................................................................17
*White Hat v. Murrill,*
 141 F.4th 590 (5th Cir. 2025) ................................................................................10
*Young Conservatives of Tex. Found. v. Smatresk,*
 73 F.4th 304 (5th Cir. 2023) ..................................................................................19
*Zemel v. Rusk,*
 381 U.S. 1 (1965) ....................................................................................................14
*Zimmerman v. City of Austin,*
 881 F.3d 378 (5th Cir. 2018) .............................................................................4, 9

**Statutes**
42 U.S.C. § 7413 ..............................................................................................................19
42 U.S.C. § 7604 ..............................................................................................................20
La. R.S. 30:2025 ..............................................................................................................10
La. R.S. 30:2381.2 ...........................................................................................................14
La. R.S. 30:2381.5 .....................................................................................................14, 17
La. R.S. 30:2381.6 ...........................................................................................................15
La. R.S. 30:2381.9 ...........................................................................................................15
La. R.S. 30:2381.10 .......................................................................................6, 8, 13, 17

**Other Authorities**
La. Code Evid. Art. 802 ....................................................................................................1

**Rules**
Fed. R. Civ. P. 12(b)(6).............................................................................................1, 12, 21
Fed. R. Civ. P. 56(c).........................................................................................................12
Fed. R. Evid. 802 ...............................................................................................................1

## INTRODUCTION

Louisiana's law regulating admissible evidence for initiating or proving state environmental enforcement is no more a Free Speech violation than is the rule against hearsay. *See* Fed. R. Evid. 802; La. Code Evid. Art. 802. Louisiana is free to regulate what evidence is admissible (and not) in its state courts and enforcement proceedings, and nothing about evidentiary rules trigger First Amendment scrutiny or preemption problems—even if Plaintiffs could invoke this Court's jurisdiction in the first place.

Admittedly, it is strange that both Defendants' Rule 12(b)(1) and 12(b)(6) motion to dismiss (ECF No. 18-1, Defs.' Mot. to Dismiss) and Plaintiffs' motion for summary judgment (ECF No. 26, Pls.' Memo.) are before the Court all at the same time. Regardless of the posture, the result is the same as a matter of law. At the pleading stage, even crediting the Complaint's well-pleaded allegations and drawing reasonable inferences in Plaintiffs' favor, they fail to establish Article III standing and fail to state a claim. Nor can their summary judgment evidence save pleading defects. The case should be dismissed. At summary judgment, allegations are not evidence. Plaintiffs were required to present competent proof establishing standing and the merits and to show they are entitled to judgment as a matter of law. They did not, so their motion should be denied.

First, Plaintiffs lack Article III standing. Their only alleged harms are self-imposed pauses in monitoring and publication based on hypothetical-penalty fears—not concrete, particularized, and imminent injuries traceable to any action or credible threat by these Defendants—and no order from this Court would redress those fears. Plaintiffs identify no intended actions even arguably proscribed, no credible threat of enforcement by a proper enforcer, and no injury that is certainly impending.

Second, sovereign immunity independently bars this suit and *Ex parte Young* offers Plaintiffs no refuge. Plaintiffs identify no specific enforcement nexus for the Attorney General beyond her general duty to enforce laws and her discretionary authority to represent Louisiana Department of

1

Environmental Quality (LDEQ) officials. Plaintiffs also failed to establish a Community Air Monitoring Reliability Act (CAMRA) specific duty or any demonstrated willingness by the LDEQ officials to act against them. Defendants are accordingly entitled to immunity, and the case must be dismissed.

Finally, even if the Court reaches the merits, Plaintiffs' claims fail. CAMRA regulates evidence, not speech. It sets technical conditions on the evidentiary use of monitoring data when it is collected for the purpose of alleging violations or noncompliance, while leaving untouched Plaintiffs' ability to monitor, publish, advocate, and petition. At most, CAMRA imposes content-neutral, technical requirements that serve important interests in accuracy and reliability and do not burden more speech than necessary. It neither compels ideology nor discriminates by viewpoint or speaker. CAMRA also is not preempted: It neither conflicts with the Clean Air Act nor nullifies any federal right (including citizen suits). It simply clarifies what Louisiana will treat as enforcement-grade evidence in its own proceedings. Plaintiffs therefore failed to state a claim upon which relief can be granted, so their claims must be dismissed. Alternatively, Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law, so their motion for summary judgment should be denied.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER THIS CASE.

The Court lacks jurisdiction for two independent reasons: (1) Plaintiffs lack Article III standing, and (2) Defendants are entitled to sovereign immunity because Plaintiffs cannot satisfy *Ex Parte Young*. Either way, this case cannot proceed. Plaintiffs' Complaint should be dismissed.

### A.    Plaintiffs Lack Article III Standing.

This case "begin[s] and end[s] with Article III standing, a bedrock constitutional requirement." *Deep S. Ctr. for Envtl. Just. v. EPA*, 138 F.4th 310, 316 (5th Cir. 2025) (quotation omitted). The standing doctrine ensures federal courts do not become "a vehicle for the vindication of the value interests of

concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984) (quotation omitted). The "irreducible constitutional minimum of standing" requires Plaintiffs to show injury in fact, traceability, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs cannot meet these requirements under Rule 12(b)(1) and especially not under Rule 56: Their alleged injuries are self-imposed and speculative, not fairly traceable to any action by these Defendants, and not likely redressable by the relief sought. Nor can labeling Plaintiffs' claims as "pre-enforcement" challenges save them. The case should be dismissed for lack of jurisdiction, and Plaintiffs' motion for summary judgment should be denied.

**1.** Organizational standing does not lower the constitutional bar. In fact, when dealing with organizational plaintiffs, "it is of particular importance that 'standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.'" *Deep S. Ctr. for Envtl. Just.*, 138 F.4th at 317 (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 486 (1982)). Plaintiffs must still establish the same Article III elements for standing as every other case in federal court: injury in fact, traceability, and redressability. *Id.* They have failed to do so here.

*Injury.* "In a limited set of circumstances, Article III permits organizations 'to sue on their own behalf for injuries they have sustained.'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (Article III requires a "concrete, particularized, and actual or imminent" injury.). Here, such an injury is missing because the alleged harms are self-imposed.

Plaintiffs' own filings confirm that they chose to pause monitoring and publication only after CAMRA's enactment due to feared penalties.[1] *See* Defs.' Mot. to Dismiss at 6–7. That is classic self-

---

[1] *See* Decl. of Justin Vittitow ¶¶ 7–8, ECF No. 25-8 ("Due to CAMRA, we have decided not to publicly post any data or results… [w]e no longer have these conversations because we are concerned about facing financial penalties"); Decl. of Shamell Lavigne ¶ 9, ECF No. 25-3 ("[RISE St. James] is also concerned about the stringent financial penalties or other legal repercussions for conduction community air monitoring using devices or methods – or further disseminating results from such devices or methods – prohibited by CAMRA"); Decl. of Amy Stelly ¶ 8, ECF No. 25-7 ("Following the passage of CAMRA, I have asked our webmaster to hide that information out of concern that Claiborne could face legal

constraint, not government restraint. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

Nor does their "credible threat" argument fit this record. Plaintiffs lean entirely on distinguishable decisions where a real enforcement mechanism targeted the speakers. Take, for example, *Susan B. Anthony List v. Driehaus*, where a statute criminalized false statements about candidates during political campaigns and created a formal complaint process. 573 U.S. 149, 152–53 (2014). There, the plaintiffs faced a "credible threat of enforcement" based on an alleged history of past complaints and prosecutions. *Id.* at 161–65. Likewise, in *Speech First, Inc. v. Fenves*, university policies applied directly to students and authorized investigations, supporting a credible threat of future enforcement. 979 F.3d 319, 335–36 (5th Cir. 2020). Same with *National Press Photographers Association v. McCraw*, where officers had authority to arrest under the statute, and the district attorney's office had already prosecuted a drone-related case, making future enforcement credible. 90 F.4th 775, 785–86 (5th Cir. 2024).

Those features are all absent here. CAMRA contains no standalone penalty scheme aimed at community monitors and no complaint or investigative mechanism targeting Plaintiffs. And Plaintiffs identify no warnings, notices, investigations, or prosecutions under CAMRA—only their own decision to pause monitoring and publication based on liability fears. Although they (incorrectly) assert CAMRA regulates content or viewpoints, Pls.' Memo. at 19, a plaintiff cannot establish standing by self-censoring if that decision is not based on a credible threat of prosecution. *Zimmerman v. City of*

---

consequences"); Decl. of Cynthia Robertson ¶ 11, ECF No. 25-4 ("[W]e stopped posting about it on social media… [and] stopped [flying colored flags] in case this too might be a violation of CAMRA's restrictions"); Decl. of Joyceia Banner ¶ 12, ECF No. 25-5 ("We would be more likely to pursue legal action using or data. However, due to CAMRA, we have decided not to for fear of severe financial penalties and other legal consequences.").

*Austin*, 881 F.3d 378, 391 (5th Cir. 2018). On this record, there is no credible threat aimed at these Plaintiffs—and therefore no concrete, particularized, actual or imminent injury.

Nor can Plaintiffs spend or litigate their way into standing. "[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394 (2024). In this Circuit, diverting "resources to litigation and legal counseling in response to actions or inactions of another party [is] insufficient to impart standing." *Deep S. Ctr. for Envtl. Justice*, 138 F.4th at 318 (citation omitted); *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010) ("Not every diversion of resources to counteract the defendant's conduct … establishes an injury in fact."); *ACORN v. Leblanc*, 211 F.3d 298, 305 (5th Cir. 2000).

Yet that is all Plaintiffs can drum up here. RISE St. James says it is not currently using PurpleAir monitors and wants to "keep using [its] data … but [is] concerned CAMRA would penalize RISE for doing so." (Decl. of Shamell Lavigne ¶ 6). Claiborne Avenue Alliance asked its webmaster to hide results for fear of "legal consequences." (Decl. of Amy Stelly ¶ 8). CCSJ worries publication might risk investigation, diverting its "limited resources on compliance and defense." (Decl. of Letitia Taylor ¶ 10). JOIN complains CAMRA "imposes ambiguous requirements" and "undermines [its] work to arm community members with facts and to advocate against unhealthy pollution." (Decl. of Justin Vittitow ¶ 7). And the Descendants Project likewise says it would be more likely "to pursue legal action using [its] data" but has "decided not to for fear of severe financial penalties and other legal consequences." (Decl. of Joyceia Banner ¶ 12). These are voluntary pauses, publication choices, and litigation-avoidance decisions—not Defendant-imposed impairments of organizational activities.

At bottom, Plaintiffs show only self-directed reallocations and fears, so they cannot establish organizational standing. *See Alliance for Hippocratic Med.*, 602 U.S. at 370; *Deep South*, 138 F.4th at 318; *Clapper*, 568 U.S. at 416.

*Traceability.* Plaintiffs also cannot establish traceability because their alleged injuries, even if sufficient under Article III, are not linked to any concrete action by these Defendants. Traceability requires a government action directed at the plaintiff—the injury must be fairly traceable to the challenged action of the defendant. *All. for Hippocratic Med.*, 602 U.S. at 382 ("The plaintiff must also establish that the plaintiff's injury likely was caused … by the defendant's conduct."). Plaintiffs identify no notice, warning, investigation, policy, or threat from these Defendants aimed at Plaintiffs' activities. The declarations likewise describe voluntary pauses and publication choices driven by fear of hypothetical liability—not by any imminent enforcement step.[2]

Nor does CAMRA's scope even reach Plaintiffs' stated activities. By its terms, CAMRA applies only when data is used "for [the] purpose[] of alleging violations or noncompliance." La. R.S. 30:2381.10. Plaintiffs admit their programs are focused on community education and outreach, not initiating or proving violations. *See* Pls.' Memo. at 1 ("Plaintiffs are six community groups that seek to use low-cost air sensors to monitor air quality in their communities and use the information they obtain to advise their neighbors and regulators about the pollutants they detect."). Self-imposed changes made in response to a law that does not govern the admitted conduct are not fairly traceable to Defendants.

Moreover, the LDEQ Report actually undercuts traceability, *contra id.* at 9, as it distinguishes between community sensors and regulatory-grade monitors, *see* ECF No. 25-10 at 5, 8 (LDEQ Report). The Report does not direct any action toward Plaintiffs, and it does not announce any enforcement posture against them. At most, it reflects technical distinctions between sensors and monitors that exist regardless of CAMRA. Defendants do not play into that calculus at all, nor have Plaintiffs alleged as much.

---

[2] *See* Decl. of Justin Vittitow ¶¶ 7–8; Decl. of Shamell Lavigne ¶ 9; Decl. of Amy Stelly ¶ 8; Decl. of Cynthia Robertson ¶ 11; Decl. of Joyceia Banner ¶ 12.

*Redressability.* Plaintiffs' redressability problems follow from their causation problem. Article III empowers courts to redress harms defendants cause, not to issue abstract pronouncements; thus, when a defendant did not cause the injury, "there is no case or controversy for a federal court to resolve." *TransUnion*, 594 U.S. at 423 (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). That is this case: the Complaint alleges no injury-in-fact traceable to a particular Defendant, so there is nothing for this Court to remedy.

A litigant must "prove" that his injury "is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 592 U.S. 53, 58 (2020) (quotation omitted); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000) (relief must make redress likely, not merely speculative). But enjoining CAMRA would not fix Plaintiffs' grievance. Even without CAMRA, their low-cost community sensors would not transform into enforcement-grade proof. Plaintiffs' own exhibit—the LDEQ Report—explains that "[p]roven and verifiable regulatory-grade monitors, such as Federal Reference Method (FRM) or Federal Equivalent Method (FEM) monitors, are employed to ensure the accuracy and reliability of the data collected," whereas community sensors are "lower in cost, portable and generally easier to operate than regulatory-grade monitors." LDEQ Report at 7, 5. The alleged injury—frustration that community-sensor data lacks enforcement weight—thus would persist regardless of CAMRA. Because Plaintiffs cannot show relief that would likely change their evidentiary status, redressability is absent.

**2.** A call to pre-enforcement standing cannot salvage Plaintiffs' claims. Plaintiffs style this as a pre-enforcement, protection-of-speech case, but CAMRA does not prohibit their stated activities—community monitoring, publication, advocacy, and petitioning. Rather, it regulates only the evidentiary use of data in enforcement proceedings. Absent any credible enforcement threat by a proper official, self-censorship does not create standing.

Applying the pre-enforcement framework to the Plaintiffs illustrates the point. Pre-enforcement standing requires Plaintiffs to show: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) their intended future conduct is "arguably proscribed" by the challenged law or policy; and (3) "a credible threat of enforcement" or "prosecution" under the law or policy. *Susan B. Anthony List*, 573 U.S. at 159–60, 162. Plaintiffs satisfy none of these elements, for much of the same reasons described above.

*First*, their intended conduct is not "arguably proscribed" by the statute. *See* Defs.' Mot. to Dismiss at 6–7 & n.1. CAMRA applies only when data is used for the purpose "of alleging violations or noncompliance." La. R.S. 30:2381.10. Yet Plaintiffs themselves characterize their activities as education and outreach, not enforcement. *See* Pls.' Memo. at 5 (repeatedly describing Plaintiffs' goals of education and outreach); Defs.' Mot. to Dismiss at 1, 3 (collecting complaint citations). Their admitted conduct therefore falls outside CAMRA's limited enforcement-focused scope.

*Second*, Plaintiffs' complaint fails to plead that they *intend* to violate CAMRA by using low-quality data to instigate enforcement proceedings in Louisiana. That alone is sufficient for the Court to dismiss on the pleadings. *See Ms. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). Same, too, with Plaintiffs' summary judgment evidence. Pls.' Memo. at 10–11 ("Plaintiffs seek to collect, use, and disseminate information about air quality, but they are deterred from doing so….").

*Third*, Plaintiffs identify no credible threat of enforcement. CAMRA sets evidentiary standards for data in enforcement proceedings. *See* La. R.S. 30:2381.10; *see also* Def. Mot. to Dismiss at 11–13. Plaintiffs fail to identity any history of investigation or complaint process, and they face no imminent enforcement action because their actions *are not proscribed*. Nor does the LDEQ Report suggest any future enforcement—it merely distinguishes between low-cost air sensors and regulatory-grade monitors. LDEQ Report at 5–9, 17. That distinction underscores CAMRA's narrow reach: It governs the evidentiary use of monitoring data in enforcement proceedings, not community monitoring or

public speech. *See* Defs.' Mot. to Dismiss at 6–7. The LDEQ Report thus reflects reliability criteria for regulatory decision-making, not any enforcement stance toward Plaintiffs. *Contra* Pls.' Memo. at 9–10. Nothing in the statute prohibits Plaintiffs from speaking, publishing, or disseminating their sensor data, so Plaintiffs cannot show a credible threat of enforcement. *See Zimmerman*, 881 F.3d at 391.

In short, Plaintiffs have not carried their burden to establish Article III standing. Their alleged harms amount to self-inflicted chill and voluntary resource allocations, not injuries imposed by Defendants. Their affidavits reflect only subjective fears, not a "concrete, particularized, and actual or imminent" injury. *TransUnion*, 594 U.S. at 423. Nor can they show traceability to any enforcement action or redressability through the relief sought. Their pre-enforcement theory likewise fails: CAMRA does not arguably proscribe their conduct, they fail to plead (let alone conclusively establish) that they intend to violate CAMRA's evidentiary-rules in instigating an enforcement proceeding, and they face no credible threat of enforcement. At most, Plaintiffs raise "some metaphysical doubt" about CAMRA's reach, which is insufficient to defeat summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted).

### B. Plaintiffs' Claims Are Barred by Sovereign Immunity.

"The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts." *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). "When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity." *Id.* at 280–81. To avoid that bar, Plaintiffs invoke *Ex parte Young*, 209 U.S. 123 (1908), and contend that they may sue the Attorney General and LDEQ officials and the Attorney General to prevent enforcement of CAMRA. *See* Pls.' Memo. at 12–16. But *Ex parte Young* applies only where a state officer has a particular duty to

enforce the challenged law and a demonstrated willingness to exercise that duty. Plaintiffs show neither.

### i. The Attorney General has no enforcement connection to CAMRA.

CAMRA assigns no enforcement role to the Attorney General. Any civil enforcement under Subtitle II lies with the LDEQ Secretary. La. R.S. 30:2025(A). The Attorney General's role is representational and discretionary—she may decline or not respond to a request for representation, in which case department counsel may proceed with her concurrence. *Id.* Discretionary, general litigation authority is not the "particular duty to enforce" that *Ex parte Young* requires. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 327 (5th Cir. 2024); *Robicheaux v. Caldwell*, 986 F. Supp. 2d 749, 752 (E.D. La. 2013); *White Hat v. Murrill*, 141 F.4th 590, 600 (5th Cir. 2025).

Plaintiffs posit that the Attorney General could bring civil penalties against them if they "violate" CAMRA. That misreads the statute. CAMRA does not create a standalone cause of action or a penalty scheme directed at community monitors. It is an evidentiary limitation on what may be used to initiate or prove a state enforcement case. Plaintiffs identify no CAMRA provision authorizing penalties against any person for collecting or publishing data, and no CAMRA-specific duty for the Attorney General to police citizen monitors. At most, Plaintiffs point to the Attorney General's general representation role under La. R.S. 30:2025(A), but a generic ability to litigate is not the "particular duty to enforce," coupled with a demonstrated willingness that *Ex parte Young* demands. *See Mi Familia Vota*, 105 F.4th at 327; *White Hat*, 141 F.4th at 600. Plaintiffs plead no warnings, notices, or steps by the Attorney General signaling an intent to pursue penalties against them under CAMRA. The Attorney General must be dismissed.

### ii. Plaintiffs Failed to Establish That LDEQ Officials Have a Demonstrated Willingness to Enforce CAMRA Against Them.

Plaintiffs likewise fail to tie CAMRA to any coercive enforcement posture by LDEQ officials. Their theory reduces to general Subtitle II authority untethered to CAMRA-specific action or intent—

precisely what *Ex parte Young* forbids. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) ("[I]t is not enough that the official have a "general duty to see that the laws of the state are implemented." (citation omitted)). *Ex parte Young* demands a particular CAMRA duty and a "demonstrated willingness to exercise that duty." *See Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc) (plurality op.). Again, Plaintiffs have identified no warnings, investigations, letters, policies, or other steps by the Secretary or Assistant Secretary signaling imminent CAMRA enforcement against Plaintiffs' intended activities, let alone the use (or even the threatened use) of the Subtitle II tools against them. That is missing "demonstrated willingness." And because CAMRA is an evidentiary limitation on what can be used to instigate or prove enforcement, not a stand-alone prohibition on Plaintiffs' speech or monitoring, pointing to the Secretary's general Subtitle II powers does not show a concrete plan to wield CAMRA against Plaintiffs' activities.

Plaintiffs' reliance on pre-enforcement cases like *Susan B. Anthony List* and *National Press Photographers* does not alter the *Ex parte Young* analysis. Those cases all involved concrete enforcement machinery—formal complaint processes, investigative authority, or actual prosecutions—that are notably absent here. Taken together, these cases underscore that the *Ex parte Young* exception applies when state officials are tied to a statute through concrete enforcement mechanisms and a willingness to enforce the statute, not a general duty to enforce.

At bottom, this is not a proper *Ex parte Young* case. Plaintiffs sue state officials untethered to any concrete CAMRA enforcement against them: the Attorney General has no CAMRA assignment, and the LDEQ officials have shown no intent to pursue Plaintiffs under CAMRA. The Defendants are all entitled to sovereign immunity, and the claims should be dismissed.

*        *        *

Whether at the pleading stage or on summary judgment, Plaintiffs cannot establish jurisdiction. Even crediting their allegations, they fail to show injury, traceability, or redressability and identify no

11

credible enforcement connection sufficient to invoke *Ex parte Young*. At summary judgment, allegations do not suffice, and Plaintiffs offer no admissible evidence to cure these defects. Plaintiffs lack standing, sovereign immunity applies, and the case fails under Rules 12(b)(1) and 56.

## II. PLAINTIFFS' CLAIMS FAIL ON THE MERITS.

### A. Standards Governing FRCP 12(b)(6) and FCRP 56.

At the pleading stage, dismissal is proper if Plaintiffs fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, "the complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Conclusory allegations, unwarranted inferences, and legal conclusions are disregarded. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Stripped of such assertions, Plaintiffs' claims must still rest on "well-pleaded facts" that make relief "plausible, not merely possible." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019). Plaintiffs' pleadings failed to carry their burden, so their claims must be dismissed without ever reaching summary judgment. Put differently, their summary judgment evidence *cannot* be used to retroactively substantiate their pleadings in the face of Defendants' motion to dismiss.

Plaintiffs also fail to meet the heightened burden for summary judgment. At that stage, the movant is entitled to judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972) (quoting Fed. R. Civ. P. 56(c)). Judgment for Plaintiffs can only be entered if "a reasonable jury drawing all inferences in favor of the nonmoving party could [not] arrive at a verdict in that party's favor." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Plaintiffs' submissions do not establish the absence of genuine disputes or entitlement to relief as a matter of law, so their motion should be denied.

### B. CAMRA Does Not Violate First Amendment Rights.

CAMRA does not violate any First Amendment rights—speech or petition. *See generally* Defs.' Mot. to Dismiss at 11–13. The statute regulates only the evidentiary use of monitoring data in enforcement, not public monitoring, publication, advocacy, or petitioning. It imposes neutral, technical quality standards unrelated to viewpoint or subject matter and leaves Plaintiffs free to speak and to petition agencies and courts. Any burden arises, if at all, only in the enforcement forum and serves important interests in accuracy and reliability.[3] And even if any provision were deemed to implicate free speech or the right to petition, CAMRA readily survives heightened scrutiny because it advances those interests through narrow, enforcement-focused requirements that leave open ample alternative channels for expression and petition.

Accordingly, Plaintiffs have failed to state a claim for relief under the First Amendment. Counts I and II must be dismissed. If the Court disagrees, then Plaintiffs still failed to establish they are entitled to judgment as a matter of law, and their motion for summary judgment should be denied.

### i. CAMRA's Scope is Evidentiary, Not Speech-Regulating.

CAMRA's scope is limited to evidentiary quality: "Data produced from community air monitoring programs alone is insufficient to demonstrate that a stationary source is in violation of rule, regulation, or permit condition." La. R.S. 30:2381.10(A). The statute further bars the Department or any person from using such data "for [the] purpose[] of alleging violations or noncompliance." La. R.S. 30:2381.10(C). In short, CAMRA dictates only the evidentiary use of monitoring data in enforcement proceedings. No more, no less.

CAMRA's stated purpose is "to establish standards for community air monitoring programs operated by entities to ensure that the data collected from such programs provides the public with

---

[3] Again, this is an evidentiary function, not a speech restriction—akin to how courts apply rules like those governing hearsay to exclude unreliable proof without chilling anyone's ability to research, speak, or publish.

access to accurate air quality information." La. R.S. 30:2381.2. To that end, CAMRA requires certain scientific standards and methods when community monitoring data is used to allege "violations or noncompliance with the federal Clean Air Act, Louisiana Environmental Quality Act, or any other applicable law." *Id.* 30:2381.5(A). None of CAMRA's provisions restrict Plaintiffs from collecting or sharing air monitoring data, criticizing environmental conditions, or petitioning the government. Instead, the statute ensures that enforcement actions brought by the State rest on scientifically reliable data. That regulatory function does not burden speech or expressive activity.

Plainly, CAMRA is not a ban on speaking. Plaintiffs remain free to collect air quality data, publish it, and to advocate based on it. What CAMRA actually prohibits is the use of data not in compliance with "the science-based standards set forth in 40 CFR Parts 50 and 58, including the NAAQS" as evidence in regulatory enforcement. La. R.S. 30:2381.5. Plaintiffs' attempt to convert CAMRA's evidentiary rule into a speech regulation cannot succeed. *Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965) ("There are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow."). "Because [CAMRA has] nothing to do with speech or even expressive activity, [it does] not implicate the First Amendment." *See Nat'l Press Photographers Ass'n*, 90 F.4th at 788. That is dispositive of the free speech claim.

### ii.    At Most, CAMRA Is a Permissible Content-Neutral Law That Incidentally Burdens Speech.

Content-neutral evidentiary rules are constitutionally permissible. As the Supreme Court explained, restrictions withstand scrutiny "if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377 (1968).

CAMRA is a neutral, technical rule tied to accuracy, reliability, and admissibility of air quality evidence in enforcement proceedings—not the suppression of ideas. It does not single out viewpoints or subject matter. And Plaintiffs' authorities do not compel the opposite conclusion. *Reed v. Town of*

*Gilbert*, 576 U.S. 155 (2015), involved a municipal sign code that directly restricted expressive displays. *Hines v. Pardue*, 117 F.4th 769 (5th Cir. 2024), concerned a ban on professional telehealth speech. And *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995), addressed denial of student-activity funds based on viewpoint. Each addressed direct regulation of speech; CAMRA's text does no such thing.

Any incidental burden here flows from rules of admissibility in enforcement—not from limits on public expression. Plaintiffs remain free to collect, publish, and advocate based on their data. At the same time, CAMRA furthers important governmental interests in ensuring accuracy and reliability. *See Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 145 S. Ct. 2291, 2318 (2025) (upholding a content-neutral regulation that furthered important governmental interests and left ample alternatives for expression).

CAMRA advances important governmental interests wholly unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. Here, too, then, Plaintiffs' free speech claim must fail.

### iii.   Even if CAMRA Regulates Speech, It Does So Permissibly.

Even if CAMRA regulates speech (it does not), the statute neither compels ideology nor restricts viewpoints. At most, its requirements function as neutral technical regulations designed to safeguard the accuracy of data in enforcement contexts.

*1. No compelled speech.* Louisiana Revised Statutes 30:2381.6 and 30:2381.9 require disclosure of technical quality-assurance information—such as method, calibration or uncertainty, and data provenance—when monitoring results are presented for regulatory purposes or in support of enforcement. These provisions do not compel anyone to adopt, endorse, or convey an ideological message; rather, they require methodological context so that technical data is not presented in a misleading way. Properly construed, any disclosure obligation applies only in regulatory-use settings

15

where omission of quality-assurance information could confuse the evidentiary weight of the data, not in ordinary public communications.

CAMRA's scheme operates as content-neutral technical disclosures that advance accuracy and reliability in the specific context of alleging or proving violations. Content-neutral laws like this one "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broadcasting System, Inc. v. FCC (Turner I)*, 512 U.S. 622, 642 (1994) (internal citation omitted). A content-neutral law will be upheld "if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner Broadcasting System, Inc. v. FCC (Turner II)*, 520 U.S. 180, 189 (1997). CAMRA satisfies that standard because it promotes accuracy and reliability in enforcement without burdening—to any real extent—Plaintiffs' ability to collect, publish, or advocate using air-quality data.

*2. No viewpoint or speaker discrimination.* CAMRA does not discriminate between sides of a debate. It regulates the technical reliability of air monitoring data presented for regulatory purposes, regardless of whether that data supports industry or community views. Plaintiffs' reliance on *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 785–86 (1978), for the proposition that government may not favor one side of a debate is therefore inapposite. Pls.' Memo. at 18–19. In *First National Bank*, a criminal statute forbid certain expenditures by banks and businesses for the purpose of influencing the vote on referendum proposals. *Id.* at 767. The Supreme Court struck down the statute because it prohibited corporate political speech and therefore suppressed corporate political expression outright. *Id.* at 790, 794. Here, CAMRA imposes neutral reliability thresholds for data used to allege noncompliance, and those thresholds apply regardless of who offers the data—community groups, industry, or the government. Plaintiffs' "speaker-based" framing overlooks that CAMRA addresses distinct regulatory

roles: it governs evidence used to trigger or prove violations, not general advocacy or public-relations speech.

Plaintiffs fault Defendants for declining to address the strict scrutiny framework. Pls.' Memo. at 20. But that misses the point. CAMRA does not regulate expression in the first place, so strict scrutiny does not apply. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("The principal inquiry in determining content neutrality… is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."). CAMRA is indifferent to the speaker's viewpoint and applies only to the evidentiary sufficiency of monitoring data in enforcement settings.

At bottom, CAMRA does not regulate speech; it governs only the evidentiary use of data in enforcement proceedings. Accordingly, Plaintiffs' free speech claim should be dismissed. In all events, CAMRA at most imposes a content-neutral evidentiary requirement that furthers the compelling governmental interest in ensuring accurate, reliable, and non-misleading enforcement records. Plaintiffs' motion for summary judgment therefore must be denied as to the free speech claim.

### iv.    CAMRA Does Not Restrict Petitioning.

In a similar vein, CAMRA does not restrict petitioning by Plaintiffs, or anyone else. *See* Def. Mot. to Dismiss at 13–14 (explaining the Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)). Because CAMRA merely governs evidence for enforcement use, the statute does not bar Plaintiffs from petitioning LDEQ, EPA, or the courts. It only requires that the science-based standards set forth in 40 CFR Parts 50 and 58, including the NAAQS be used to allege or prove violations in enforcement proceedings. *See* La. R.S. 30:2381.5; La. R.S. 30:2381.10. That is no different from how hearsay or foundation rules limit the use of information as proof in court without suppressing anyone's ability to speak, publish, or petition. *See Guarnieri*, 564 U.S. at 388 ("The right to petition allows citizens to express their ideas, hopes, and concerns to their

government and their elected representatives[.]"). Plaintiffs remain free to lobby, submit comments, request investigations, meet with regulators, file public records requests, speak to the press, and file lawsuits. Nothing in CAMRA penalizes or discourages those activities; it simply sets evidentiary standards for what can support an enforcement decision. Neutral evidentiary thresholds do not trigger preemption. Further, when the government makes a general policy, "it is under no greater constitutional obligation to listen to any specially affected class than it is to listen to the public at large." *Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 287 (1984)

Plaintiffs cite (at 21–22) *Smith v. Arkansas State Highway Emps., Local 1315*, 441 U.S. 463, 464 (1979) (per curiam), and *California Motor Transportation Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972), in an attempt to evade this clear conclusion. But both involved direct prohibitions or retaliation and are therefore inapplicable here. In *Smith*, public employees claimed retaliation for filing grievances, 441 U.S. at 464, and in *California Motor*, private parties allegedly conspired to block competitors from accessing courts and agencies altogether, 404 U.S. at 509. CAMRA does nothing of the sort. It leaves intact the full scope of petitioning activity, while simply ensuring that any evidentiary data offered in enforcement settings meets objective standards of reliability.

CAMRA does not bar, punish, or chill petitioning activity. And any incidental burden on Plaintiffs' right to petition is evidentiary in nature and directly advances the State's important interest in accurate and reliable enforcement. Plaintiffs' Petition Clause claim therefore cannot stand and must be dismissed.

*        *        *

Plaintiffs' First Amendment claims resoundingly fail. On the pleadings, their allegations do not state a First Amendment violation: CAMRA regulates evidentiary use in enforcement, not speech or petitioning, and any incidental burden serves an important governmental interest. Their claims must be dismissed. Plaintiffs likewise come up short on their request for summary judgment. They offer no

competent evidence establishing a speech or petition clause violation, so they are not entitled to judgment as a matter of law. This Court should dismiss their claims, or, at a minimum, deny summary judgment.

### C.  CAMRA Is Not Preempted by Federal Law.

Preemption applies only where "compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 311, 313 (5th Cir. 2023) (quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015)). Courts apply this analysis by examining "the explicit statutory language and the structure and purpose of the statute." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). Under that framework, Plaintiffs' preemption claim falls flat. CAMRA neither displaces federal standards nor frustrates federal purposes. Instead, as explained in Defendants' Motion to Dismiss (at 14–17), it complements the federal scheme by specifying what counts as enforcement-grade-evidence in Louisiana proceedings, while leaving monitoring, publication, and advocacy entirely untouched. Plaintiffs' arguments to the contrary fail.

*First,* CAMRA merely specifies what evidence Louisiana will treat as sufficient. Yet Plaintiffs rely on 42 U.S.C. § 7413 (EPA enforcement authority) and § 7413(f) (informant rewards), arguing that CAMRA "restricts the information" EPA can receive. Pls.' Memo. at 23. That's not true. CAMRA does not regulate what information EPA may receive or consider—it regulates only how Louisiana will treat certain data in its own enforcement proceedings. Nothing in CAMRA prevents community groups from submitting information to EPA or EPA from acting under § 7413. The statute simply limits the evidentiary use of non-compliant monitoring data in Louisiana enforcement.

Moreover, contrary to Plaintiffs' claims (at 23), the Clean Air Act contains no express preemption clause forbidding states from adopting more stringent, or more specific, procedural or evidentiary rules related to enforcement. As such, CAMRA does not rewrite any federal ambient

standard, monitoring requirement, or permit program. Instead, it clarifies what evidence Louisiana will treat as sufficient to allege or prove a violation in its own enforcement actions, while leaving monitory, publication, and advocacy untouched.

*Second*, CAMRA does not bar citizen suits. Plaintiffs argue (at 23) that 42 U.S.C. § 7604(a), which authorizes "any person" to bring citizen suits under the Clean Air Act, creates a preemption conflict with CAMRA. But CAMRA does not limit access to federal courts, bar citizen suits, or restrict EPA's jurisdiction. Plaintiffs remain free to collect data, publish it, petition agencies, submit complaints, and file suit where federal law authorizes. CAMRA merely specifies what qualifies as proof to allege or prove a violation in state enforcement. Nothing in CAMRA prevents Plaintiffs from bringing a federal action under 42 U.S.C. § 7604.

Plaintiffs reliance on *Haywood v. Drown*, 556 U.S. 729, 736 (2009), for the proposition that a State may not "nullify a federal right" is inapposite. Pls'. Memo. at 24. CAMRA does not "shut the doors" or nullify any federal cause of action. *See Haywood*, 556 U.S. at 736. Unlike the law in *Haywood*, CAMRA leaves federal jurisdiction and remedies intact. At the risk of sounding like a broken record, CAMRA merely clarifies evidentiary standards under state law, without restricting Plaintiffs' ability to file suits in federal courts or seek remedies under federal law.

*Third*, federal encouragement of community sensors does not amount to preemption. Plaintiffs point to EPA grants and federal programs—including initiatives funded under the American Rescue Plan (ARP) and the Inflation Reduction Act (IRA)—that encourage the development and use of community air sensors in a last-ditch attempt to create a preemption problem sufficient to override CAMRA. Pls.' Memo. at 24. But federal encouragement via statute, standing alone, does not preempt state law absent a direct conflict. This is the kind of obstacle preemption argument courts reserve for situations where a state measure would actually thwart a specific federal program or financing structure—not merely operate alongside federally encouraged activity.

Plaintiffs' reliance (at 24) on *City of Morgan City v. S. La. Elec. Co-op. Ass'n*, 31 F.3d 319, 321 (5th Cir. 1994), underscores the point. There, preemption arose because of "a municipality's attempt to condemn equipment and electricity consumers within an area annexed by the municipality." *Id.* at 320. The court held that "[w]ere [the municipality's] expropriation action allowed to stand, it would 'stand as an obstacle' to the repayment of federal loans, to the financial viability of federally financed electricity cooperatives, and ultimately, to the maintenance of electricity service to rural areas." *Id.* at 324 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Here, by contrast, neither CAMRA nor any Louisiana provision conflicts with federal law encouraging community monitoring. The ARP and IRA are funding statutes, not preemption engines. Defs.' Mot. to Dismiss at 16–17. They encourage monitoring capacity and innovation, but they do not mandate the evidentiary use of uncertified sensor data in state enforcement. CAMRA leaves those monitoring and outreach functions untouched. It simply requires that data used to allege or prove violations in Louisiana enforcement proceedings meet established reliability thresholds. That quality-control role complements, rather than obstructs, federal objectives of ensuring accurate and credible monitoring.

CAMRA fits within the CAA's cooperative federalism framework and aligns with federal distinctions between regulatory-grade and informational data. Accordingly, the preemption claim fails on the pleadings and should be dismissed under Rule 12(b)(6); alternatively, the summary-judgment record identifies no concrete conflict, impossibility, or obstacle, so Plaintiffs have not shown entitlement to judgment as a matter of law under Rule 56.

## CONCLUSION

This Court should grant Defendants' motion to dismiss for lack of jurisdiction or, if this court reaches the merits, for failure to state a claim upon which relief can be granted. If this Court denies Defendants' motion to dismiss, then it should deny Plaintiffs' motion for summary judgment, as they failed to establish that they are entitled to judgment as a matter of law.

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY:    /s/ *Amanda M. LaGroue*

Carey T. Jones (#07474)
Amanda M. LaGroue (#35509)
Tanika L. Starks (#38902)
Assistant Attorneys General
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, LA 70802
Telephone: (225) 326-6060
Facsimile: (225) 326-6098
Email: Jonescar@ag.louisiana.gov
        LaGroueA@ag.louisiana.gov
        Starkst@ag.louisiana.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 6th day of October, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

/s/ *Amanda M. LaGroue*
AMANDA M. LAGROUE