UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RISE ST. JAMES LOUISIANA, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COURTNEY J. BURDETTE, in her official capacity as Secretary of the Louisiana Department of Environmental Quality, et al.,<br><br>　　　　Defendants. | Civil Action No. 3:25-cv-00429-JWD-RLB |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN OPPOSITION**

**NOW INTO COURT,** through undersigned counsel, comes defendants, Courtney J. Burdette, in her official capacity as Secretary of the Louisiana Department of Environmental Quality, Jerry Lang, in his official capacity as Assistant Secretary for Environmental Compliance at the Louisiana Department of Environmental Quality, and Liz Murrill, in her official capacity as Attorney General of Louisiana, who submits in opposition to Plaintiffs' Motion for Summary Judgment, the following Statement of Material Facts, including the Attorney General's response to Plaintiffs' Statement of Material Facts:

**I.　Defendants' Statement of Material Facts:**

**1.** In 2023, the Louisiana Legislature enacted the Community Air Monitoring Reliability Act (CAMRA) to establish technical and evidentiary standards for the data used in actions to enforce air quality, where the State has primary enforcement authority. *See* La. R.S. 30:2381.1–2381.11 (enacted as Act No. 181 of the 2023 Regular Legislative Session).

**2.** CAMRA regulates only evidentiary use of data in enforcement. La. R.S. 30:2381.10(A) states: "Data produced from community air monitoring programs alone is insufficient to demonstrate that a stationary source is in violation of a rule, regulation, or permit condition."

**3.** CAMRA provides that "the department or any person" may not use community monitoring data "for the purpose of alleging violations or noncompliance." La. R.S. 30:2381.10(C).

**4.** CAMRA contains no language prohibiting private parties from collecting, publishing, or disseminating community monitoring data.

**5.** CAMRA includes no penalty provision directed at community groups or individuals.

**6.** Louisiana's general enforcement statute, La. R.S. 30:2025(A), empowers the Secretary of LDEQ to bring "any civil action necessary to carry out the provisions of this Subtitle." That authority is limited to enforcing substantive provisions of environmental law, not to policing speech or community education.

**7.** Under La. R.S. 30:2025(A), the Attorney General has no independent enforcement role under CAMRA; her representation under La. R.S. 30:2025(A) is contingent on a request from the Secretary and her agreement to proceed.

**8.** CAMRA requires that for the purpose of alleging violations or noncompliance with the federal Clean Air Act, Louisiana Environmental Quality Act, or any other applicable law, rule, or regulation for which the state has primary enforcement authority community air monitoring programs shall use the science-based standards set forth in 40 CFR Parts 50 and 58, including the NAAQS. La. R.S. 30:2381.5(A).

**9.** CAMRA further requires that community air monitoring programs which seek to conduct monitoring of hazardous air pollutant or toxic air pollutant emissions for the purpose of alleging violations or noncompliance with the federal Clean Air Act, Louisiana Environmental Quality Act, or any other applicable law, rule, or regulation for which the state has primary enforcement authority shall use an Environmental Protection Agency-approved or promulgated emission test or monitoring method, or the latest revision to such methods approved or promulgated by the Environmental Protection Agency. La. R.S. 30:2381.5(B).

**10.** CAMRA limits the data that LDEQ can "use[], disclose[], or disseminate[]," to issue "a fine, penalty, or violation against any person, including the owner or operator of a stationary source" or bring "an administrative, regulatory, or judicial enforcement action or proceeding." La. R.S. 2381.10(B)(1)–(2).

**11.** CAMRA operates as an evidentiary safeguard: it limits the use of uncertified data in enforcement actions in Louisiana but does not otherwise regulate the activities of community groups.

**12**. CAMRA's limitations apply *only* to community air monitoring groups that seek to monitor air quality for the purposes of alleging violations or noncompliance. La. R.S. 30: 2381.10(C).

## I. Response to Plaintiffs' Statement of Material Facts:

**22.** CAMRA thus prohibits a community group from using, disclosing, or disseminating air monitoring data that does not comply with CAMRA's requirements to LDEQ or EPA for purposes of or in support of federal or state enforcement actions. *Id.*

**Response:** Denied by Defendants. Nothing in CAMRA prohibits community groups from using, disclosing, or disseminating their data to anyone, including LDEQ or EPA. CAMRA provides only that non-compliant community air monitoring data may not be used by LDEQ or any person "for the purpose of alleging violations or noncompliance" in an enforcement action. La. R.S. 30:2381.10(B)–(C). The statute regulates the evidentiary use of data in enforcement proceedings; it does not restrict groups from sharing or publishing their monitoring results.

**23.** CAMRA also prohibits a community group from using, disclosing, or disseminating air monitoring data that does not comply with CAMRA's requirements in connection with "citizen suit" actions under the Clean Air Act and the required 60-day pre-suit notification to EPA and the relevant state agency. *Id.*; *see* 42 U.S.C. § 7604.

**Response:** Denied by Defendants. CAMRA contains no prohibition on "using, disclosing, or disseminating" community monitoring data in connection with Clean Air Act citizen suits or 60-day

notices. By its terms, CAMRA provides only that such data "shall not be used … for the purpose of alleging violations or noncompliance" in an enforcement action. La. R.S. 30:2381.10(B)–(C). Nothing in the statute bars citizen groups from citing or transmitting their own data in a notice letter under 42 U.S.C. § 7604(b).

**29.** Community groups that violate CAMRA face cease and desist orders from LDEQ and civil actions for appropriate relief, including injunctive relief. *Id.* § 30:2025.C(3).

**Response:** Denied by Defendants. La. R.S. 30:2025(C)(3) addresses LDEQ's general enforcement authority under the state's environmental laws. CAMRA does not create an independent violation, authorize cease-and-desist orders, or civil actions against community groups for the collection or dissemination of monitoring data. The statute sets evidentiary limits on how such data may be used in enforcement, but it does not impose penalties on community groups.

**32.** The LDEQ Report explains that CAMRA "establishes clear standards for nongovernmental entities to conduct air quality monitoring" and "was created to establish standards for monitoring programs to ensure public access to accurate air quality information and requires that equipment, software, and methods for data collection and analysis use current EPA-approved testing and monitoring methods." *Id.*

**Response:** Denied by Defendants. The cited language is drawn from LDEQ's Report, not from CAMRA itself. The Report is descriptive, not regulatory, and does not establish binding standards for nongovernmental monitoring. CAMRA's operative provisions limit only the evidentiary use of data in enforcement proceedings. La. R.S. 30:2381.10.

**34**. The description of CAMRA in the LDEQ Report confirms that CAMRA imposes substantive requirements on community air monitoring programs. *Id.*

**Response:** Denied by Defendants. LDEQ Report distinguishes between community sensors and regulatory-grade monitors. (LDEQ Report, R. Doc. 25-10, pp. 4, 16.) Plaintiffs use community,

low-cost sensors. The Report does not direct any action toward Plaintiffs, and it does not announce any enforcement posture against them. At most, it reflects technical distinctions that exist regardless of CAMRA.

**45.** Plaintiffs are subject to civil liability and penalties if their community air monitoring programs collect, use, and disseminate air quality data and analysis in a manner that does not comply with CAMRA's requirements. La. R.S. §§ 2025, 2381.5, 2381.6, 2381.9, 2381.10.

**Response:** Denied by Defendants. CAMRA does not impose civil liability or penalties on Plaintiffs for collecting, using, or disseminating community air monitoring data. The statute addresses only the evidentiary use of data "for the purpose of alleging violations or noncompliance." La. R.S. 30:2381.10.

**46.** Because of the threat of civil liability and penalties under CAMRA, Plaintiffs have had to censor their communications on air quality data from air monitoring. Lavigne Decl. ¶¶ 6–11; Robertson Decl. ¶¶ 11–12; Banner Decl. ¶¶ 11–13; Taylor Decl. ¶¶ 10–12; Stelly Decl. ¶¶ 8–9; Vittitow Decl. ¶¶ 7–8, 10–11.

**Response:** Denied by Defendants. The Plaintiffs cite no enforcement history or penalty provision under CAMRA that has required them to censor their communications. Their declarations reflect only self-imposed decisions based on subjective fears, not any credible threat of civil liability or penalties from Defendants (RISE St. James says it's not currently using PurpleAir monitors and wants to "keep using [its] data … but [is] concerned CAMRA would penalize RISE for doing so." (Decl. of Shamell Lavigne ¶ 6). Claiborne Avenue Alliance asked its webmaster to hide results for fear of "legal consequences" (Decl. of Amy Stelly ¶ 8). CCSJ worries publication might risk investigation, diverting its "limited resources on compliance and defense." (Decl. of Letitia Taylor ¶ 10). JOIN complains CAMRA "imposes ambiguous requirements" and "undermines [its] work to arm community members with facts and to advocate against unhealthy pollution." (Decl. of Justin Vittitow

¶ 7). And the Descendants Project likewise says it would be more likely "to pursue legal action using [its] data" but has "decided not to for fear of severe financial penalties and other legal consequences." (Decl. of Joyceia Banner ¶ 12).

Respectfully submitted,

**LIZ MURRILL**
**ATTORNEY GENERAL**

BY:     /s/ *Amanda M. LaGroue*

Carey T. Jones (#07474)
Amanda M. LaGroue (#35509)
Tanika L. Starks (#38902)
Assistant Attorneys General
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, LA 70802
Telephone: (225) 326-6060
Facsimile: (225) 326-6098
Email: jonescar@ag.louisiana.gov
        LaGroueA@ag.louisiana.gov
        starkst@ag.louisiana.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 6th day of October, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

/s/*Amanda M. LaGroue*
AMANDA M. LAGROUE